## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No.:14-02689-11 |
| | ) | |
| **FOODS, INC. dba DAHL'S FOODS;** | ) | Chapter 11 |
| **DAHL'S FOOD MART, INC.;** | ) | |
| **DAHL'S HOLDINGS I, LLC,** | ) | Hon. |
| | ) | |
| Debtors and Debtors in Possession. | ) | **DEBTORS' MOTION FOR ORDER** |
| | ) | **APPROVING AUCTION AND** |
| 4343 Merle Hay Road | ) | **BIDDING PROCEDURES;** |
| Des Moines, IA 50310 | ) | **APPROVING COST AND COST AND** |
| | ) | **EXPENSE REIMBURSEMENT;** |
| EIN:42-0803702 | ) | **PRESCRIBING MANNER OF NOTICE;** |
| | ) | **AND AUTHORIZING SALE OF** |
| | ) | **ASSETS FREE AND CLEAR OF LIENS,** |
| | ) | **CLAIMS AND ENCUMBRANCES,** |
| | ) | **SUBJECT TO HIGHER OR BETTER** |
| | ) | **OFFERS** |
| | ) | |
| | ) | |
| | ) | No Hearing Set |
| _____ | ) | |

Foods, Inc. dba Dahl's Foods, Dahl's Food Mart, Inc., and Dahl's Holdings I, LLC (collectively "Dahl's" and/or "Debtor"), Debtor and Debtor-in-Possession in this Chapter 11 case herein, by and through their proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully submits this Motion for Order (1) Approving Auction and Bidding Procedures; (2) Approving Cost and Cost and Expense Reimbursement; (3) Prescribing Manner of Notice; and (4) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers. In support of this Motion ("Motion"), the Debtor states as follows:

1. Debtor commenced the captioned case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on November 9,

2014 (the "Petition Date").

2.  Debtor continues to operate its businesses and manage its property as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

3.  No trustee or examiner has been appointed in this case. No Official Unsecured Creditors Committee ("OUCC") has been appointed in the case.

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein include Bankruptcy Code §§ 105(a), 363, 365 and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

5.  As of the Petition Date, Dahl's has received inquiries and an offer to purchase substantially all of the Debtor's assets at its grocery store facilities in the greater Des Moines, Iowa metro area (collectively referred to as the "Des Moines Facilities" and as further defined in the APA). Good-faith and arms-length negotiations have resulted in the Debtor executing an Asset Purchase Agreement (hereinbefore and after, the "APA") with Associated Wholesale Grocers, Inc., a Kansas corporation, or its designees ("Purchaser"). Attached hereto as Exhibit "A" and incorporated by reference herein is a true and exact copy of the APA.

6.  Debtor is seeking Court approval of Auction and Bidding Procedures that would provide for the submission of competing bids, an auction, and final sale hearing within sixty (60) days of the filing date of this Motion ("Filing Date"). The Debtor's proposed Auction and Bidding Procedures are attached hereto as Exhibit "B" and are incorporated by reference herein. Debtor believes that a sale pursuant to the APA and Auction and Bidding Procedures is in the best interest of Debtor's estate and its creditors.

7. By this Motion, Debtor seeks authority to solicit bids and sell substantially all of its assets associated with the Des Moines Facilities (otherwise referred to as the "Assets").

8. Debtor believes this Motion, the APA and the transactions contemplated thereby are in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case. An orderly sale of the Assets is essential. The proceeds of the sale, to the extent sold as a going concern, will be greater than if the same Assets are sold in a piecemeal liquidation; as the Debtor's ongoing business will not be interrupted; and on-going vendor relationships can be maintained. Finally, an orderly sale process will also aid in minimizing the administrative expenses of Debtor's estate.

## Marketing Efforts

9. In order to do the most efficient job possible in marketing the Assets, attempting to create an auction environment, and testing the marketplace to ensure the Debtor and the Bankruptcy Estate are realizing the maximum value for the Des Moines Facilities, The Food Partners ("Food Partners") was retained by the Debtor to market the Des Moines Facilities.

10. Food Partners will prepare an executive summary of the Des Moines Facilities and its investment highlights to be distributed to potential buyers, both strategic and financial, that will execute Non-Disclosure Agreements. Further, Food Partners plans to populate a Virtual Data Room ("VDR") to facilitate interested parties due diligence exercises. Food Partners will also work with interested parties to supplement diligence investigations and facility tours, as necessary.

## Relief Requested

11. As stated above, the Debtor intends to sell the Assets and believes that an orderly sale of the Assets is the best way to maximize the value of the Assets for the benefit of creditors

and all parties in interest. Accordingly, Debtor requests that a hearing be held expeditiously for the Court to enter an order (the "Sale Procedures Order") (i) approving the Auction and Bidding Procedures; (ii) approving the Cost and Expense Reimbursement (as defined below); (iii) and approving the form and manner of notice (the "Sale Notice") of the proposed Auction and Bidding Procedures.

12. Debtor requests that the Court approve the Auction and Bidding Procedures and Sale Notice within fourteen (14) days of the Filing Date (the "First Hearing").

13. After approval by the Court of the Auction and Bidding Procedures, and the Sale Notice at the First Hearing, Debtor will send such notice to all potential purchasers of the Assets known to Debtor and Variant, and if Competing Bids are received, an Auction (as defined in the Auction and Bidding Procedures) shall be held.

14. Debtor further requests that the Court, at a second hearing to be held promptly after the Auction (and if no Auction is held, within seven (7) days after the Competing Bid Deadline), enter an order (the "Sale Order") approving the sale of the Assets to Purchaser (or to such other party or parties that make the highest or best bid(s) at the Auction), free and clear of any and all liens, claims and encumbrances, and approving the assumption and assignment of certain executory contracts and unexpired leases to Purchaser (or to such other party or parties that make the highest or best bid(s) at the Auction), in connection with such sale.

## Auction and Bidding Procedures

15. To ensure that Debtor has maximized the value of the Assets, Debtor has caused Purchaser to agree that the sale of the Assets must be subject to the proposed Auction and Bidding Procedures described in detail in Exhibit "B".

16. Bankruptcy Code Section 363 governs Debtor's ability to sell property of the

estate outside of the ordinary course of business. Although this section does not set forth a standard for determining when it is appropriate to authorize such a sale, courts have uniformly held that such a sale should be approved when it is justified by a sound business purpose. *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d. Cir. 1983); *Chrysler Group LLC v. South Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 668 (E.D. Michigan 2012); *In re Dewey & LeBoeuf LLP*, No. 12–12321 (MG), 2012 WL 5386276, at *5 (Bankr. S.D. N.Y. Nov. 1, 2012); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008). The burden of establishing a rational business justification lies with the debtor. *Nicole Energy*, 385 B.R. at 230 (citing *Lionel*, 722 F.2d at 1070-71). However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company. *See*, *e.g.*, *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900 (8th Cir. 2007).

17. Applying Bankruptcy Code Section 363, courts accord Debtors substantial deference in formulating procedures for selling assets. *See*, *e.g.*, *In re Boston Generating, LLC*, 440 B.R. 302, 329-330 (S.D. N.Y. 2010) (noting that the requirements for section 363 sales are reviewed according to the deferential "business judgment" standard); *In re Adelphia Communications Corp.*, No. 02–41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003) (applying the "business judgment" standard presumption of validity and noting that courts are "loath to interfere with corporate decisions absent showings of bad faith, self-interest, or gross negligence"). Indeed, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. *See*, *e.g.*, *In re Dura Automotive Sys., Inc.*, No. 06–11202, 2007 WL 7728109, at *90 (Bankr. Del. Aug. 15, 2007) (finding that "procedures

intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales").

18.     Here, the Auction and Bidding Procedures are supported by ample business justification and are reasonable and appropriate under the circumstances of this case. The proposed Auction and Bidding Procedures are designed to foster an open, competitive and fair sale process, while maximizing the value the estate hopes to obtain for the Assets. Debtor requests that the Court approve the Auction and Bidding Procedures as fair and reasonable under the circumstances and authorize and direct Debtor to proceed in accordance with them.

### The Cost and Expense Reimbursement is Reasonable and Appropriate

19.     The sole bid protection being provided to the Purchaser (otherwise sometimes referred to as the "Stalking Horse Bidder") is a fee in an amount of $315,000.00, to reimburse the Stalking Horse for their time, trouble and expenses incurred in this process ("Cost and Expense Reimbursement"). Due to the complexity of the sale and the speed with which it has proceeded, the Cost and Expense Reimbursement is reasonable under the circumstances.

20.     After considering the reasonableness of bidding incentives, courts have approved a range of break-up fees as a percentage of the purchase price in the range provided here as being appropriate under the facts and circumstances of the case. See In re Chi-Chi's Inc., Case No. 03-13063 (Bankr. D. Del. November 4, 2003) (fee of 5.1% permitted); In re Great Northern Paper. Inc., Case No. 03-10048 (Bankr. D. Me. February 18, 2003) (fee of 5.4% plus reimbursement of expenses upheld); In re FSC Corp., Case No. 00-b-04659 (Bankr. N.D. Ill. February 28, 2000) (break-up fee of 3.4% plus reimbursement of expenses is reasonable).

21.     The Cost and Expense Reimbursement should be approved because it is reasonable, will not chill bidding and is necessary to further the process of selecting additional bids. The Stalking Horse Bidder has made it clear that it will not proceed as a stalking horse

without the protection of ensuring that it receives the Cost and Expense Reimbursement, if the process it served to put into motion results in some other party owning the Debtor's Assets. The Debtor's ability to continue to shop the Des Moines Facilities for a higher or better offer, or even to market test the Stalking Horse Bidder's offer, would be eliminated if the Debtor could not secure the APA, inclusive of the Cost and Expense Reimbursement provision.

22.     The APA will form the basis upon which other bids will be submitted and evaluated. The "Initial Minimum Overbid" of $500,000.00 exceeds the Cost and Expense Reimbursement, and, therefore, the Cost and Expense Reimbursement both establishes a threshold for overbids and will not result in a less beneficial net return from the sale.

23.     Payment of the Cost and Expense Reimbursement will not harm creditors. Pursuant to the APA, the Debtor will incur the obligation to pay the Cost and Expense Reimbursement only if the Debtor accepts an alternative transaction for the sale of all or substantially all of the Assets of the Debtor to any party other than the Stalking Horse Bidder and that sale closes. The Cost and Expense Reimbursement will be paid from the proceeds of an alternative transaction in which the Prevailing Bidder is not the Stalking Horse, and the Initial Minimum Overbid will exceed the Cost and Expense Reimbursement. In light of the benefit to the Debtor's estate that is realized by having an agreed-upon APA, which thereby enables the Debtor to preserve the value of its estate and promote more competitive bidding, approval of the Cost and Expense Reimbursement is warranted.

### The Proposed Transaction Satisfies All Applicable Legal Standards

24.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a Debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See also* Bankruptcy Rule 6004(f)(1) ("All sales not in the ordinary

course of business may be by private sale or by public auction"). This section generally permits a Debtor to sell property of the estate outside of the ordinary course of its business where the proposed sale is a sound exercise of the Debtor's business judgment and when such sale is proposed in good faith. *See In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 210 (S.D. Ohio 2008) ("Under the law of this [Sixth] Circuit, the Court may approve a sale of all of a debtor's assets under § 363(b) 'when a sound business purpose dictates such action.'") (quoting *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)).

25. In the instant case, the proposed sale of the Assets pursuant to the APA constitutes a sound exercise of Debtor's business judgment and has been proposed in good faith. First, an expeditious sale of the Assets will aid in minimizing the administrative expenses of Debtor's estate, resulting in greater distribution to creditors. Second, such sale will increase the probability grocery and related operations will not be interrupted and vendor relationships preserved. Finally, the sale represents the best opportunity for the Debtor to realize the value of the Assets on a going-concern basis, considering external factors in the marketplace.

26. Debtor believes this Motion, the APA and the transactions contemplated thereby are in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.

27. Debtor submits that the factors described above, which support an expeditious sale of the Assets, are consistent with the traditional rationale for authorizing a sale outside of a Chapter 11 plan. *See also In re Boston Generating, LLC,* 440 B.R. 302, 321 (S.D. N.Y. 2010); *Lionel*, 722 F.2d at 1070.

**Sale Free and Clear of Liens**

28. Bankruptcy Code § 363(f) authorizes a Debtor to use, sell or lease property of the estate outside of the ordinary course of business, free and clear of any interest in such property. The APA provides for the sale of the Assets free and clear of all interests, liens, claims and encumbrances, including existing or asserted rights of first refusal, contractual restrictions on transferability or other similar protective rights. Any such interests, liens, claims and encumbrances would attach to the proceeds of the sale of the Assets (the "Sale Proceeds") ultimately attributable to the property against or in which such interest, lien, claim or encumbrances is asserted.

29. Under Bankruptcy Code § 363(f)(2), a sale free and clear of all interests, liens, claims and encumbrances is permissible if all parties asserting liens on or other interests in the assets consent. Debtor is providing proper notice of this Motion to the United States Trustee, Senior and Other Secured Creditors, OUCC (if applicable), the ICC (if applicable), counter-parties to executory contracts and unexpired leases and all other parties who have filed requests for special notice, thereby giving them the opportunity to object to this Motion. Provided no Secured Creditors object to this Motion, Section 363(f)(2) will be satisfied. *See, e.g.*, *In re Motors Liquidation Co.*, 430 B.R. 65, 72) (in a Chapter 11 case, noting that "secured lenders" approved a transaction under § 363(b) of the Bankruptcy Code and related transactions).

30. Under Bankruptcy Code § 363(f)(4), a sale free and clear of all interests, liens, claims and encumbrances is permissible if the interest of any entity is in *bona fide* dispute. Under Bankruptcy Code § 363(f)(5), a sale free and clear of all interests, liens, claims and encumbrances is permissible if any party asserting an interest in the assets could be compelled to accept money satisfaction of such interest in a legal or equitable proceeding. The Debtor submits

that to the extent an Inter Creditor Committee ("ICC") asserts security interests in the Des Moines Facilities, and does not consent under Section 363(f), a sale free and clear of their interests will still be permissible because, as to an ICC, its interests, if any, or the amount of its interests, if any, are in fact the subject of a *bona fide* dispute, and they could be compelled to accept a money satisfaction of their interests in a legal equitable proceeding.

## Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases

31. To facilitate and effect a sale of the Assets, the Debtor will be required to assume and assign to the Prevailing Bidder certain unexpired leases and executory contracts (the "Assumed and Assigned Contracts"). No later than twelve (12) days prior to the Sale Hearing, the Debtor shall cause notice to be provided to all counterparties to unexpired leases and/or executory contracts that may be Assumed and Assigned Contracts (the "Cure Notice"). The Cure Notice shall provide the counterparties to the possible Assumed and Assigned Contracts notice of the amount that the Debtor believes must be cured upon the assumption and assignment as required under Section 365 of the Bankruptcy Code (the "Cure Amount").

32. Except as may otherwise be agreed to by the parties to an Assumed and Assigned Contract (with the consent of the Prevailing Bidder), on the Effective Date, the Debtor shall cure those defaults under the Assumed and Assigned Contracts that need to be cured in accordance with Bankruptcy Code § 365(b) by (a) payment of the undisputed Cure Amounts, and/or (b) reserving amounts with respect to the disputed Cure Amounts. In the event of a dispute regarding the Cure Amount, any payments required, following entry of a Final Order resolving such dispute, shall be made as soon as practicable thereafter. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed and Assigned Contract or other documents as of the date of the Cure

Notice.

33. Objections, if any, to the proposed assumption and assignment of the Assumed and Assigned Contracts, including, but not limited to, objections relating to the Cure Amount and/or adequate assurances of future performance, must be filed by a particular time and date to be established by the Court in this case (the "Objection Deadline").

### APA Does Not Establish Any Sub Rosa Plan of Reorganization

34. A sale of assets may not be approved where such sale, rather than merely changing the composition of the Debtor's assets, either restructures the right of creditors or predetermines the rights of creditors under any future plan of reorganization. *See In re Braniff Airways, Inc.*, 700 F.2d 935, 939-40 (5th Cir. 1983); *In re Iridium Operating LLC*, 478 F.3d 452, 465-66 (2nd Cir. 2007); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1227-28 (5th Cir. 1986).

35. In *Braniff*, the Fifth Circuit held that an agreement between the Debtor and its creditors established a *sub rosa* plan of reorganization because, among other things, the agreement: (i) required that any future plan of reorganization allocate certain assets only to employees, shareholders or unsecured creditors of the Debtor; (ii) required the secured creditors to vote a portion of their deficiency claim in favor of any future plan of reorganization approved by a majority of the unsecured creditors' committee; and (iii) provided for the release of claims by all parties against the Debtors, its secured creditors and its officers and directors. 700 F.2d at 939-40.

36. Unlike *Braniff*, the transactions contemplated by the APA will not restructure the rights of Debtor's creditors or predetermine the rights of such creditors under any future plan of reorganization.

37. Furthermore, Debtor has articulated sound business justifications for selling the Assets now, rather than as part of a plan. A Bankruptcy Code § 363 sale motion should be approved if it is based on good business reasoning *In re Lionel Corp.*, 722 F.2d at 1070; *In re Equity Management Systems*, 149 B.R. 120 (Bankr. S.D. Iowa 1993) (Court considered some of the following factors: whether all parties in interest received reasonable notice; whether the purchase price is fair and reasonable; whether there is a sound business reason for the sale; and whether the proposed sale unfairly benefits insiders or proprietary purchasers, or unfairly favors a creditor or class). All such factors have been met here.

38. The Purchase Price (including the assumption of certain obligations) is a fair offer for these Assets at this time. Furthermore, the Purchase Price will be tested in the marketplace via the auction and bid process. The likelihood that a plan of reorganization will be confirmed very quickly is doubtful, and the future value of these assets are subject to being diminished due to external market forces. Given the current economic climate, Debtor believes it would be imprudent to ignore such an attractive offer now when the value of the Assets could be adversely affected or deteriorate in the coming months prior to plan confirmation. Basically, Debtor is taking the conservative approach that a "bird in hand is worth two in the bush," again subject to any higher and better offers under the Auction and Bidding Procedures.

### APA Was Negotiated at Arm's Length and in Good Faith

39. The APA and the transactions related thereto were negotiated, have been, and are undertaken by Debtor and Purchaser at arm's length, without collusion and in good faith within the meaning of Bankruptcy Code § 363(m), and Debtor accordingly requests that the Court determine that the entire sale process will be conducted in good faith within the meaning of Bankruptcy Code § 363(m) and that Seller and Purchaser are entitled to the protections of

Bankruptcy Code § 363(m). *See In re Brook Valley IV.,* 347 B.R. 662, 676 (B.A.P. 8th Cir. 2006).

40. In Debtor's view, the APA represents substantial value to Debtor's estate inasmuch as it provides favorable terms for the disposition of the Assets at a price that represents fair and reasonable consideration having a certain value. *See id.* At the conclusion of the bid process and auction opportunity, Debtor will have the highest and best offer to submit to this Court for approval.

**Reduction or Elimination of 14-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**

41. Time is of the essence in approving and closing the sale, and any unnecessary delay in closing the sale could result in the collapse of the sale. Accordingly, this Court should waive the 14-day period staying any order to sell or assign property of the estate imposed by Bankruptcy Rules 6004(h) and 6006(d).

**CONCLUSION**

Based upon the authorities and facts detailed above, Debtor submits that the Court should approve, at the First Hearing, the Auction and Bidding Procedures and prescribe the manner of notice; and at a Second Hearing to be held promptly after the Auction, or if no Auction is held, within seven (7) days after the Competing Bid Deadline, subject to the terms of the Auction and Bidding Procedures, the Court should approve the sale of the Assets to Purchaser or such other successful bidder at the Auction. Such relief is warranted because Debtor has shown that the transactions connected to the APA are in the best interests of Debtor, its estate and creditors, and because the decision to enter into the APA was reached in the exercise of Debtor's sound business judgment, after careful deliberation of its consequences and possible alternatives.

WHEREFORE**,** the Debtor respectfully requests that the Court hear this Motion and enter

an Order: (a) finding that due and adequate notice and an opportunity to be heard in accordance with all applicable law were given to all creditors and interested parties in the Chapter 11 Case, and any and all other affected or interested parties; (b) approving the Auction and Bidding Procedures and Cost and Expense Reimbursement, prescribing the manner of notice; (c) setting a Second Hearing to, subject to the Auction and Bidding Procedures: (i) authorize the sale of the Assets free and clear of all liens, encumbrances, claims and interests, including but not limited to mortgage liens, personal property liens, construction and mechanics' liens, judgment liens, rights of first refusal and all other claims; (ii) find that the sale be effective immediately and that the stay provisions of Bankruptcy Rules 6004(h) and 6006(d) do not apply; (d) finding that nothing related to or arising out of the APA or the Sale Order shall cause Purchaser to be deemed to be in control of Seller, or to be acting as a "responsible person" with respect to the operation and management of seller, prior to or after the Closing; and (e) provide such other relief as is just and proper under the circumstances.

Date:  November 9, 2014                                         Respectfully submitted,

                                                                /s/ *Jeffrey D. Goetz*
                                                                Jeffrey D. Goetz, Esq., IS #9999366
                                                                Bradshaw Fowler Proctor & Fairgrave, P.C.
                                                                801 Grand Avenue, Suite 3700
                                                                Des Moines, IA 50309-8004
                                                                515/246-5817
                                                                515/246-5808 FAX
                                                                goetz.jeffrey@bradshawlaw.com

                                                                Proposed General Reorganization Counsel
                                                                for Foods, Inc. dba Dahl's Foods, Dahl's
                                                                Food Mart, Inc., and Dahl's Holdings I,
                                                                LLC, Debtors and Debtors-in-Possession

CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.  */s/      LuAnn Gilbert*

## SUMMARY OF EXHIBITS

The following exhibits in reference to the Motion for Order are available upon request:

      Exhibit A:      Asset Purchase Agreement

      Exhibit B:      Auction and Bidding Procedures