# EXHIBIT "B"

# AUCTION AND BIDDING PROCEDURES

On November 9, 2014 (the "Filing Date"), Foods, Inc. dba Dahl's Foods, Dahl's Food Mart, Inc., and Dahl's Holdings I, LLC (collectively and together the "Selling Debtor"), filed their voluntary petitions for bankruptcy under Chapter 11 of the United States Bankruptcy Code. These bidding procedures set forth the process by which the Selling Debtor is authorized to conduct a sale by auction (the "Auction") of the Sale Assets (defined below), including the sales transaction contemplated by the Asset Purchase Agreement (the "Stalking Horse APA") between Selling Debtor and Associated Wholesale Grocers, Inc. ("Stalking Horse Bidder").

Capitalized terms used, but not defined, herein shall have the meanings assigned to them in the form of asset purchase agreement attached to the Sale Motion of which these Auction and Bidding Procedures are a part, which agreement is identical to the Stalking Horse APA (defined hereinabove) in all material respects.

1.  Sale Assets. The "Sale Assets" are the Assets as defined in the Stalking Horse APA.

2.  Stalking Horse Auction. The Sale Assets will be marketed and sold using an auction conducted by Selling Debtor pursuant to Section 363 of the Bankruptcy Code and a Bidding Procedures Order entered by the Bankruptcy Court in the Bankruptcy Case. Pursuant to the Stalking Horse APA, (i) Debtor has agreed to sell, and Stalking Horse Bidder has agreed to acquire, the Sale Assets for a purchase price of $4,800,000.00 (the "Stalking Horse Bid"), subject to the adjustments set forth in the Stalking Horse APA, the outcome of the Auction and Bankruptcy Court approval and (ii) in the event the Sale Assets are not sold to the Stalking Horse Bidder, the Selling Debtor has agreed to pay the Stalking Horse Bidder a Cost and Expense Reimbursement in an amount $315,000.00. The Sale Assets will be marketed and bids will be received in bulk.

3.  Due Diligence. Immediately after the Filing Date and upon execution of a Confidentiality Agreement (as defined below), any party with the intent to timely consummate transaction in terms of scope and value that is of interest to the Selling Debtor and that wishes to conduct reasonable due diligence on the Sale Assets may be granted access to relevant business and financial information that will enable such party to evaluate the Sale Assets for the purpose of submitting a competing offer for the Sale Assets; *provided, however*, that the Selling Debtor has no obligation to provide information after the Bid Deadline (defined below); and *provided, further*, that the Selling Debtor may decline to provide information to parties that, in consultation with a Committee, if any, and the secured creditors, have not established that they intend in good faith to and/or have the ability to consummate a purchase of the Sale Assets.

4.  Auction Participation. Only the Stalking Horse Bidder and Qualifying Bidders may participate in the Auction for the Sale Assets. A "Qualifying Bidder" is a party that has: (i) submitted a Qualifying Bid (defined below) to the Selling Debtor; and (ii) executed a confidentiality agreement in form and substance satisfactory to the Selling Debtor (a "Confidentiality Agreement").

5.  Qualifying Bids. A "Qualifying Bid" is a written offer that:

Case 14-02689-als11    Doc 19-2    Filed 11/09/14    Entered 11/09/14 19:14:36    Desc
Exhibit B - Auction and Bidding Procedures    Page 2 of 6

-2-

a. states that the bidder offers to purchase all of the Sale Assets upon terms and conditions substantially as set forth in the Stalking Horse APA (an "Unmodified APA") or such alternate purchase and sale agreement that the Selling Debtor determines, in consultation with a Committee, if any, and the secured creditors, is no less favorable than the terms and conditions of the Stalking Horse APA (a "Modified APA");

b. results in a value to the Selling Debtor, in consultation with a Committee, if any, and the secured creditors that is more than the "Minimum Bid," which is the sum of the Stalking Horse Bid, Cost and Expense Reimbursement and $185,000.00 (the Cost and Expense Reimbursement plus the $185,000.00 (total of $500,000.00) shall be deemed the "Initial Minimum Overbid");

c. does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, termination, or similar type of fee or payment;

d. is accompanied by a cash deposit in the amount of ten percent (10%) of the Minimum Bid amount, which amount (a "Deposit") shall be deposited with the Escrow Agent;

e. is accompanied by a clean and duly executed Unmodified APA or Modified APA;

f. is accompanied by a marked Modified APA, if applicable, reflecting the variations from the Stalking Horse APA;

g. identifies with particularity each and every Contract and unexpired lease, the assumption and assignment of which is a condition to closing;

h. contains a representation that the bidder is financially capable of consummating the transactions contemplated by the Unmodified APA or Modified APA;

i. contains financial and other information that the Selling Debtor determines in its sole discretion is sufficient to allow it to evaluate and confirm the bidder's financial and other capabilities to consummate the transactions contemplated by the Unmodified APA or Modified APA, including evidence reasonably satisfactory to the Selling Debtor that such bidder has received, in writing, debt and/or equity funding commitments (without contingencies) or has financial resources readily available and sufficient in the aggregate to finance the purchase of the Sale Assets, and financial and other information establishing adequate assurance of future performance under Section 365 of the Bankruptcy Code (which information may be served by the Selling Debtor on contract or lease counterparties);

j. does not contain any due diligence or financing contingencies of any kind;

k. fully discloses the identity of each entity that will be bidding for the Sale Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

l. states that the offering party consents to the core jurisdiction of the Bankruptcy Court;

    m.    includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Unmodified APA or Modified APA; and

    n.    otherwise complies in all respects with the terms of the Unmodified APA or Modified APA.

Each Qualifying Bid shall remain open and irrevocable until the later of the fourteenth (14th) day following the date of entry of the Sale Order approving the sale of the Sale Assets by the Bankruptcy Court or the twenty first (21st) day following the date of the Auction (as defined below) (the "Offer Expiration Date") or such earlier date as may be determined by the Selling Debtor in consultation with a Committee, if any, and the secured creditors.

6.    Bid Deadline.

Each party other than the Stalking Horse Bidder wishing to participate in the Auction must submit a written offer (via email, fax or other means) so as to be received prior to that particular date established by the Bankruptcy Court pursuant to the relevant order approving these procedures (the "Bid Deadline").

7.    Determination of Qualifying Bids.

The Selling Debtor shall, by no later than two (2) business days after the Bid Deadline at 5:00 p.m. (prevailing Central time), or as soon as reasonably practicable (the "Bid Determination Deadline"):

    a.    determine in consultation with a Committee, if any, and the secured creditors whether a written offer is a Qualifying Bid; and

    b.    notify each party submitting a written offer whether that written offer is a Qualifying Bid.

8.    Auction Procedures.

In the event that the Selling Debtor receives one or more Qualifying Bids, the Auction shall take place beginning at a date and time approved by the Bankruptcy Court herein. The Auction shall be organized and conducted by the Selling Debtor at the offices of Bradshaw, Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa.

The Auction shall be governed by the following procedures:

    a.    The Stalking Horse Bidder and each Qualifying Bidder shall appear in person or through a duly authorized representative;

    b.    The Stalking Horse Bidder and each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

  c. Only the Stalking Horse Bidder and Qualifying Bidders shall be entitled to submit bids;

  d. Bidding shall commence at the amount of the highest Qualifying Bid submitted prior to the Auction;

  e. The Selling Debtor reserves the right to determine, in consultation with a Committee, if any, and the secured creditors, whether a bid constitutes a higher and better offer than previous bids, based upon factors including, but not limited to, the amount of the purchase price, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any requested changes to the Stalking Horse APA, the scope and nature of any obligations or liabilities of Selling Debtor to be assumed by the bidder and the net benefit to the Selling Debtor's estate;

  f. Bids must be at least $50,000.00 (the "Auction Bid Increment") higher than the outstanding highest bid; *provided, however,* that any further bid made by the Stalking Horse Bidder shall include a credit against the Purchase Price equal to the Cost and Expense Reimbursement; and *provided, further,* that nothing in the foregoing clause shall be deemed to release Selling Debtor from any liability to the Stalking Horse Bidder for the Cost and Expense Reimbursement in the event the Stalking Horse Bidder is not the successful bidder;

  g. The Stalking Horse Bidder and Qualifying Bidders may make additional modifications to the Stalking Horse APA, Unmodified APA or Modified APA, as applicable, during the Auction, provided, however, that any such modifications, on an aggregate basis, shall not be less favorable to the Selling Debtor as determined by the Selling Debtor in consultation with a Committee, if any, and the secured creditors;

  h. The Selling Debtor intends to continue the Auction until the Selling Debtor determines, in consultation with a Committee, if any, and the secured creditors, that it has received the highest and/or best offer (such offer, the "Prevailing Bid," and the bidder submitting such offer, the "Prevailing Bidder");

  i. Upon consultation with any creditor or related committee, the Selling Debtor may, at any time prior to the commencement of the Sale Hearing (defined below), continue the Auction from time to time, adjourn the Auction, and reopen the Auction; and

  j. The auction and bidding procedures outlined herein may not be modified, except upon order of the Bankruptcy Court, or upon the consensual discretion of the Selling Debtor and any creditor or related committee in their reasonable business judgment after consultation with their respective counsel and sales professionals.

9. No Qualifying Bids. If no Qualifying Bid is submitted by the Bid Deadline, the Selling Debtor shall cancel the Auction and accept the Stalking Horse Bid, in which case, the Prevailing Bid shall be the Stalking Horse Bid, and the Prevailing Bidder shall be the Stalking Horse Bidder.

10. Announcement of Prevailing Bidder and Execution of APA. Within one (1) business day after the conclusion of the Auction or cancellation thereof, the Selling Debtor shall announce the

identity of the Prevailing Bidder, and the Selling Debtor and Prevailing Bidder shall complete and execute all necessary agreements, contracts, instruments and other documents to memorialize the Prevailing Bid and thereafter proceed toward Closing pursuant to terms and conditions of the Prevailing Bid and the terms of the Stalking Horse APA, Unmodified APA or Modified APA, as applicable.

12.     Selling Debtor's Acceptance of Prevailing Bid Subject to Bankruptcy Court Approval. The Prevailing Bid will be subject to approval by the Bankruptcy Court at the Sale Hearing. The Selling Debtor shall be deemed to have accepted the Prevailing Bid only when the Bankruptcy Court has approved such Prevailing Bid as highest and best pursuant to section 363 of the Bankruptcy Code.

13.     Sale Hearing. A hearing (the "Sale Hearing") will be held to approve the sale of the Sale Assets to the Prevailing Bidder before the Bankruptcy Court for the Southern District of Iowa, 110 East Court Avenue, Des Moines, Iowa, at such time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned by the Bankruptcy Court from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

14.     Failure to Consummate. If for any reason a Person submitting a Prevailing Bid fails to consummate the acquisition of the Sale Assets the bidder offering the next highest or best bid, whether for the Sale Assets will automatically be determined to have submitted the Prevailing Bid, and the Selling Debtor is authorized to effect the sale of the Sale Assets to such offeror (the "Alternate Bidder") as soon as is commercially reasonable without further Order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by a Person submitting a Prevailing Bid, any Deposit deposited by such Person with the Selling Debtor shall be forfeited to the Selling Debtor, except as otherwise set forth in the respective purchase agreement as approved by the Bankruptcy Court.

15.     Return of Deposits. Except as otherwise provided in the Stalking Horse APA, the Deposits (including interest or investment income accrued thereon, if any) shall be returned to any bidder who is not the Prevailing Bidder no later than five (5) business days following conclusion of the Auction; provided, however, that, if there is no Auction, all Deposits will be returned no later than five (5) business days following the announcement of the Prevailing Bidder.

16.     Miscellaneous. The Auction and Bidding Procedures are solely for the benefit of the Selling Debtor, and nothing contained in the Bidding Procedures Order shall create any rights in any other Person, including any bidder, other than the rights expressly granted to a Successful Bidder under the Bidding Procedures Order. Except as provided in the Bidding Procedures Order, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures Order.

17.     Cure Notice. No later than twelve (12) days prior to the Sale Hearing, the Debtor shall cause notice to be provided to all counterparties to unexpired leases that may be Assumed and Assigned Contracts (the "Cure Notice"). The Cure Notice shall provide the counterparties to the possible Assumed and Assigned Contracts notice of the amount that the Debtor believes must be

-6-

cured upon the assumption and assignment as required under Section 365 of the Bankruptcy Code (the "Cure Amount"). Objections, if any, to the proposed assumption and assignment of the Assumed and Assigned Contracts, including, but not limited to, objections relating to the Cure Amount and/or adequate assurances of future performance, must be filed on or before a specific date and time to be established by the Bankruptcy Court (the "Objection Deadline").