IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **FOODS, INC.,** | ) | Case No.  14-02689-11 |
| an Iowa corporation, | ) | (Jointly Administered) |
| | ) | |
| **DAHL'S FOOD MART, INC.,** | ) | Case No.  14-02690-11 |
| an Iowa corporation, | ) | (Jointly Administered) |
| | ) | |
| **DAHL'S HOLDINGS I, LLC,** | ) | Case No.  14-02691-11 |
| an Iowa limited liability company | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

**ORDER (A) APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, INCLUDING A BREAK-UP FEE, IN CONNECTION WITH THE AUCTION AND SALE OF ASSETS AND SCHEDULING AN AUCTION AND SALE HEARING; (B) APPROVING ASSUMPTION OF ASSET PURCHASE AGREEMENT; (C) APPROVING FORM AND MANNER OF NOTICE; (D) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS; AND (E) GRANTING OTHER RELATED RELIEF**

THIS MATTER along with objections filed by West Coast Life Insurance Company [Docket No. 96]; Commerce Bank [Docket No. 98]; the Official Committee of Unsecured Creditors (the "Creditors' Committee") [Docket No. 102]; Merchants Capital Resources, Inc., [Docket No. 103]; and the United States Trustee [Docket No. 113] (collectively, the "Objections") have come before the Court on the motion (the "Motion") [Docket No. 19] dated November 9, 2014, of the Debtors for entry of an order approving, among other things: (a) bidding procedures including certain bid protections in connection therewith including a Break-Up Fee (as defined below) (substantially in the form attached hereto as **Exhibit A**, the "Bidding Procedures") and scheduling an Auction and the Sale Hearing for the sale of the Assets (as that term is defined in the Bidding Procedures); (b) the assumption of the Stalking Horse APA (as

attached as Exhibit A to the Motion, as subsequently amended by announcement on the record at the hearing with respect to the Motion, and as that term is defined in the Bidding Procedures); and (c) the form and manner of notice of sale by auction of the Assets (substantially in the form attached hereto as **Exhibit B**, the "Sale Notice").[1] After due deliberation, and having reviewed the Motion, the Objections, and materials submitted by the parties, and having considered the statements of counsel on the record, and the evidence adduced with respect to the Motion at a hearing to consider same, and having considered the agreements announced by the parties, and having determined that the relief requested in the Motion is in the best interests of the Debtors and their estates, in light of the circumstances described by counsel and reflected in the evidence,

**THE COURT HEREBY FINDS THAT:[2]**

A.      This court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Fed. R. Bankr. P. 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007, and 9014.

C.      Notice of the Motion having been given to the parties indicated in the certificates of service filed at Docket Numbers 32, 51, and 68 is sufficient in light of the circumstances and the nature of the relief requested in the Motion.

---

[1] Unless otherwise stated, capitalized terms not defined herein shall have the meanings set forth in the Stalking Horse APA.

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Fed. R .Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.     The Debtors have articulated good and sufficient reasons for this court to grant the relief requested in the Motion regarding the sales process, which is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtors' estates, including, without limitation: (i) approval of the Bidding Procedures and the Bid Protections and, under the circumstances described herein, the Break-Up Fee (as defined below); (ii) determination of final Cure Amounts in the manner described herein; and (iii) the form and manner of notice of sale by auction.

E.     The Break-Up Fee to be paid under the circumstances described in the Stalking Horse APA (as that term is defined in the Bidding Procedures) to the Stalking Horse Bidder (as that term is defined in the Bidding Procedures) is: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Bidder; (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the sale transaction and to continue to be bound by the Stalking Horse APA; and (v) necessary to induce the Stalking Horse Bidder to continue to pursue the sale transaction and to continue to be bound by the Stalking Horse APA.

F.     The Break-Up Fee also induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid on which the Debtors, its creditors and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and its creditors by increasing the likelihood that the best possible price for the Assets will be received.

Accordingly, the Bidding Procedures, Bid Protections, and the Break-Up Fee are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

G.      Assumption of the Stalking Horse APA constitutes a fair and reasonable exercise of Debtors' business judgment and is fair, reasonable and in the best interests of Debtors' estates, creditors and equity holders.

H.      The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Sale Hearing and Auction, including the date, time and place of the Auction, and the time fixed for the filing of objections to the Auction or sale of the Assets.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED EFFECTIVE IMMEDIATELY THAT:**

1.      The Bidding Procedures and Sale Notice are hereby approved in their entirety. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures and Bid Protections.  In the event of any discrepancy between the terms of this Order and the Bidding Procedures, the terms of this Order shall govern.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled (and all reservations of rights included therein) as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled on the merits except as otherwise set forth herein.

3.      The Debtors are authorized and directed to assume the Stalking Horse APA pursuant to section 365 of the Bankruptcy Code, and the Stalking Horse APA is hereby deemed to be assumed by the Debtors immediately upon the entry of this order.

4.      Within five (5) business days of entry of this order, the Debtors (or their agent) shall serve by first class mail, postage prepaid, copies of: (i) this order (the "Bidding Procedures Order") (ii) the Bidding Procedures; and (iii) the Sale Notice, upon the following entities (collectively, the "Notice Parties"):[3]

(a)    the United States Trustee;

(b)    counsel to the Creditors' Committee;

(c)    counsel to Permitted Encumbrance holders;

(d)    the Securities and Exchange Commission;

(e)    all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service;

(f)    the United States Department of Justice;

(g)    all environmental authorities having jurisdiction over any of the Assets, including the United States Environmental Protection Agency;

(h)    state, county, and municipal governments having jurisdiction over any of the Assets;

(i)    all parties that have requested special notice pursuant to Fed.R.Bankr.P. 2002;

(j)    all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Assets;

(k)    all Contract Parties;

(l)    counsel to the Stalking Horse Bidder; and

(m)    all potential bidders previously identified by or otherwise known to the Debtors.

5.      Within seven (7) business days of entry of this order, the Debtors (or their agent) shall serve either by: (a) first class mail, postage prepaid, (b) personal service, or (c) electronic

---

[3] The Sale Notice will direct parties to contact The Food Partners attention Matthew Morris, Investment Banker for Debtors, for more information and will provide that any party that wishes to obtain a copy of any related document (subject to any necessary confidentiality agreement) may make such a request in writing to The Food Partners attention Matthew Morris, 5335 Wisconsin Avenue, NW, Suite 410, Washington, DC 20015, msmorris@thefoodpartners.com.

mail, copies of: (i) this order (the "<u>Bidding Procedures Order</u>") (ii) the Bidding Procedures; and

(iii) the Sale Notice, upon all of the Debtors' employees.

6.     The Break-Up Fee as set forth in the Stalking Horse APA is hereby approved.

7.     If the Stalking Horse Bidder becomes entitled to receive the Break-Up Fee in

accordance with the terms of the Stalking Horse APA, then the Stalking Horse Bidder shall be,

and hereby is:

(a)     granted an allowed administrative claim in the Debtors' chapter 11 cases
in an amount equal to the Break-Up Fee, under sections 503(b)(1) and
507(a)(2) of the Bankruptcy Code; and

(b)     granted a priority in payment, and priority in lien, over any and all claims
of holders with existing liens on the Assets or the proceeds of the sale
thereof, as the case may be, except the Permitted Encumbrance[4] holders.

8.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any

expense reimbursement, breakup fee, "topping," termination, or other similar fee or payment.

9.     The Debtors are authorized and directed to pay the Break-Up Fee to AWG on the

earlier of: (a) the Closing Date and (b) the date such obligation comes due pursuant to the

Stalking Horse APA; <u>provided</u>, <u>however</u>, that, if all or part of the Break-Up Fee remains unpaid

as of the Closing Date, all such amounts shall be paid directly to AWG from the proceeds from

the Sale prior to any other disbursements made to any party, except the Permitted Encumbrance

holders, pursuant to any order of this Court authorizing the sale of any assets of the Debtors or

otherwise.

10.     If the Stalking Horse Bidder, the Creditors' Committee, or any Qualified Bidder

objects to the manner in which the Debtors have conducted the Auction or the Debtors'

---

[4] As such term is defined in the Interim And Final Orders (i) Approving Postpetition Financing, (ii) Authorizing Use Of Cash Collateral, (iii) Granting Security Interests And Superpriority Administrative Expense Treatment, (iv) Providing Adequate Protection, (v) Modifying Automatic Stay, (vi) and Granting Adequate Protection Pursuant To Sections 363 And 364 Of The Bankruptcy Code, and (vii) Setting Final Hearing, Pursuant To 11 U.S.C. §§ 363, 364 And 365 And Federal Rule Of Bankruptcy Procedure 4001 [Docket Nos. 45 and ___].

determination of a Qualified Bid as the highest or best bid, it shall have standing at the Sale

Hearing to contest the Debtors' determination or conduct of the Auction, and if the Court

determines that the Debtors either (1) improperly conducted the Auction; or (2) erroneously

declared a particular Qualifying Bid as the highest or best bid, any affected Qualified Bidder

shall be permitted to make a further bid at the Sale Hearing for consideration by the Bankruptcy

Court as the highest or best bid.

11.     As further described in the Bidding Procedures, the Sale Hearing will commence

on **January 30, 2015** at **9:00 a.m. prevailing Central time** or at such other hour on that date as

the Court shall announce.  The Sale Hearing may be adjourned by the Bankruptcy Court from

time to time without further notice to creditors or parties-in-interest other than by announcement

of the adjournment in open court on the date scheduled for the Sale Hearing.

12.     Objections, if any, to the remainder of the relief requested in the Motion must: (a)

be in writing and filed with this court **no later than January 12, 2015** (the "Objection

Deadline"); (b) comply with the Federal Rules of Bankruptcy Procedure and the Local

Bankruptcy Rules; and (c) be served upon the Debtors, counsel for the Creditors' Committee,

and counsel for the Stalking Horse Bidder so as to be **actually received** on or before the

Objection Deadline.

13.     The auction to conduct bidding with respect to the sale of the Assets, if necessary,

shall have commenced by no later than January 19, 2015 and shall have been completed no later

than January 21, 2015.

14.     For the avoidance of doubt, the personal property associated with the leases of (i)

Commerce Bank, N.A. (Master Lease Schedules 001 & 002); (ii) General Electric Capital

Corporation; (iii) GE Capital Commercial, Inc.; (iv) Merchants Capital Resources (Commerce

Bank Master Lease Schedule 003); and (v) Bankers Leasing Company is considered, for purposes of the Stalking Horse APA, to be Excluded Personal Property pursuant to Section 1.44(g) of the Stalking Horse APA; provided, however, that such leases are subject to the rights granted to the Buyer under the Stalking Horse APA with respect to such leases including, without limitation, the Designation Rights.  To the extent that the Debtors conclude that any or all of such leases are not "true leases" but rather "disguised financing arrangements," the Debtors may seek, by separate motion, to sell such personal property (as opposed to the leases associated therewith) as an asset of the Debtors' estates, and such assets may, but only upon further order of the Court, be sold in separate lots at the Auction (as defined in the Bidding Procedures attached as Exhibit A) at the discretion of the Debtors, in consultation with the Creditors' Committee and the secured creditors, subject to the rights of such lessors to object to (i) the characterizations of such "leases" as "disguised financing arrangements" and (ii) the form and manner of the sale of such personal property.

15.     Notwithstanding the possible applicability of Fed.R.Bankr.P. 6004(h), 7062, 9014 or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

16.     All time periods set forth in this order shall be calculated in accordance with Fed.R.Bankr.P. 9006(a).

17.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted herein.

18.     To the extent that this order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this order shall govern.

8

19.     This court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the Stalking Horse APA and this order.

IT IS SO ORDERED.

Date: December ___, 2014

_____
United States Bankruptcy Judge

Reviewed and approved:

*/s/ Jeffrey D. Goetz*
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
*Proposed General Reorganization Counsel for Debtors*

*/s/ Devon J. Eggert*
Richard S. Lauter (admitted *pro hac vice*)
Thomas R. Fawkes (admitted *pro hac vice*)
Elizabeth L. Janczak (admitted *pro hac vice*)
Devon J. Eggert (admitted *pro hac vice*)
Freeborn & Peters LLP
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.360.6000
Facsimile:  312.360.6520
*Proposed Counsel for Official Committee of Unsecured
Creditors of Foods, Inc., d/b/a Dahl's Foods, et al.*

*/s/ Mark T. Benedict*
Mark T. Benedict (admitted *pro hac vice*)
John J. Cruciani (admitted *pro hac vice*)
Matthew Gartner (admitted *pro hac vice*)
Husch Blackwell LLP

4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct:  816.983.8000
Fax:  816.983.8080
*Counsel for Associated Wholesale Grocers, Inc.*


Daniel M. McDermott
United States Trustee
Region 12
By:    *James L. Snyder*
James L. Snyder
Assistant United States Trustee
ID # IS9999967
210 Walnut Street, Room 793
Des Moines, Iowa 50309-2108
Ph: (515) 284-4982 / Fax: 284-4986


*/s/ Joseph A. Peiffer*
Joseph A. Peiffer    IS9999471
Ronald C. Martin    IS9998294
Abram V. Carls      IS9997749
Day Rettig Peiffer, P.C.
PO Box 2877
Cedar Rapids, Iowa   52406-2877
Telephone:  (319) 365-0437
FAX:  (319) 365-5866
*Attorneys for Creditors Commerce Bank and
Merchants Capital Resources, Inc.*


*/s/ Julie Johnson McLean*
Julie Johnson McLean (AT#005185)
Davis, Brown, Koehn,
Shors & Roberts, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa 50309
Telephone: (515) 288-2500
Facsimile: (515) 243-0654
*Attorney for West Coast Life Insurance Company*

## **EXHIBIT A**

## **AUCTION AND BIDDING PROCEDURES**

        The sellers, who are debtors and debtors-in-possession in those jointly administered bankruptcy cases pending in the United States Bankruptcy Court (the "Bankruptcy Court") for the Southern District of Iowa under Case Number 14-02689-11, 14-02690-11, and 14-02691-11 (the "Sellers"), have entered into an agreement with Associated Wholesale Grocers, Inc. ("AWG") for the purchase and sale of substantially all of the Assets of the Sellers (the "Stalking Horse APA").  The consummation of the transaction contemplated by the Stalking Horse APA is subject to the Bidding Procedures described herein.  If a Qualified Bid, as defined below, is received on or before the date set forth herein for the submission of bids, the Sellers shall conduct an auction of the Sellers' Assets (as defined in the Stalking Horse APA), pursuant to Section 363 and 365 of the Bankruptcy Code, pursuant to the following terms and conditions:

        1.    *Submission of Competing Bids*.  Any person (other than the Buyer as defined in the Stalking Horse APA (the "Lead Bidder" or the "Stalking Horse Bidder")) that would like to purchase some or all of the Assets must submit a bid (a "Competing Bid") so **as to be received prior to 5:00 p.m. Prevailing Central Time on January 12, 2015** (the "Competing Bid Deadline").  Each bid must (i) be in writing; (ii) be for consideration, which either alone, or if for materially less than all of the Assets (a "Lot Bid"), in combination with other complimentary bids for other of the Assets ("Aggregated Lot Bid"), will result in an amount equal to or greater than the Alternative Minimum Purchase Price (as defined below); (iii) specify the Sellers' Assets that are being bid upon; (iv) indicate whether or not the bidder intends to take assignment of the Supply Agreement with Associated Wholesale Grocers, Inc.; (v) identify the bidder and the members of its investor group, as applicable; (vi) provide information to demonstrate to the satisfaction of the Sellers, in consultation with the secured creditors and the Creditors' Committee (as defined below), the financial wherewithal of the bidder to consummate the proposed transaction; (vii) specify which leases and executory contracts of the Debtors are to be assumed and the manner in which the cure amounts will be satisfied; (viii) include a copy of the Stalking Horse APA signed by the bidder (with any changes to the Stalking Horse APA with the Lead Bidder marked electronically); and (ix) be accompanied with a Cash Deposit (by bank or certified check payable to the Debtors) equal to 10% of the Base Purchase Price set forth in the Stalking Horse APA.  If the Competing Bid is a Lot Bid, the Competing Bid must be accompanied by a Cash Deposit (by a bank or certified check payable to the Debtors) equal to 10% of the purchase price amount of the applicable Lot Bid offered for the applicable assets.  A Competing Bid must be served on (i) the Debtors (ii) counsel for the Debtors, (iii) counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee") and (iv) counsel for AWG.  Potential bidders may obtain copies of the Stalking Horse APA (and/or other information or a copy of any related document (subject to any necessary confidentiality agreement)), by making such request in writing to the Investment Banker for the Debtors: The Food Partners, attention Matthew Morris, 5335 Wisconsin Avenue, NW  Suite 410, Washington, DC 20015 msmorris@thefoodpartners.com.  Any Competing Bid shall not contain any due diligence or financing contingency, shall not provide for representations and warranties by the Sellers more extensive than typical in a sale pursuant to Section 363 of the Bankruptcy Code and must be expressly made subject to the Break-Up Fee under the terms of the Stalking Horse APA and the

order approving these Bidding Procedures (the "Bidding Procedures Order"). A Competing Bid meeting the requirements outlined in this Paragraph shall constitute a "Qualified Bid." A "Qualified Bidder" is a party that has: (i) submitted a Qualified Bid; and (ii) executed a confidentiality agreement in form and substance satisfactory to the Sellers (a "Confidentiality Agreement"). The Debtors, however, can request the Court to determine a Competing Bid containing a due diligence or financing contingency is a Qualified Bid if the due diligence or financing contingency is less than two weeks and the Competing Bid otherwise meets the requirements outlined in this paragraph. Any party-in-interest's right to object to such determination shall be expressly preserved. By no later than two (2) business days prior to the Auction (as defined below) at 5:00 p.m. Prevailing Central Time, the Debtors, in consultation with secured creditors (with the exception of the Lead Bidder) and the Creditors' Committee, shall determine which bids should be accepted as Qualified Bids and shall notify such parties. Debtors shall promptly provide notice to any secured creditor or any lessor, as applicable, of any Qualified Bids which seek to purchase any collateral property of the secured creditor or any personal property of the lessor leased by the Debtors.

Each Qualified Bid shall remain open and irrevocable until the later of the fifteenth (15th) day following the date of entry of the Sale Order approving the sale of the Assets by the Bankruptcy Court or the twenty-first (21st) day following the date of the Auction (as defined below) (the "Offer Expiration Date") or such earlier date as may be determined by the Sellers in consultation with the Creditors' Committee and the secured creditors.

2.      *Credit Bid*. The rights, if any, of a secured creditor (including any lessors that may be determined to be secured creditors) to credit bid under Section 363(k) of the Bankruptcy Code are expressly preserved. To the extent a secured creditor intends to exercise a right to credit bid, such creditor must provide written notice of its intent to credit bid to the Sellers and the Creditors' Committee on or before the Competing Bid Deadline. Upon providing notice of its intent, a secured creditor will be entitled to credit bid at the Auction as defined herein. The exercise of a right, if any, by a secured creditor to credit bid under Section 363(k) shall not be deemed a consent to any particular sale or a waiver of any rights to object to a particular sale. A secured creditor shall be deemed to be a Qualified Bidder without the need to make a deposit as required herein above and a credit bid shall not be made subject to all or any portion of the Break-Up Fee.

3.      *Information to be Provided*. Upon written request to the Sellers' Investment Banker at the address above by any person interested in submitting a bid for the Assets or a Lot Bid, the Sellers shall, upon execution by such person of a confidentiality agreement and demonstration of the intent to timely consummate a transaction in terms of scope and value that is of interest to the Sellers, provide such person with access to relevant business and financial information that will enable such person to evaluate the Assets or the assets to be included in a Lot Bid for the purpose of submitting a Competing Bid; provided, however, that the Sellers have no obligation to provide information after the Competing Bid Deadline; and provided further, however, that the Sellers may decline to provide information to parties that, in consultation with the Creditors' Committee and the secured creditors, have not established that they intend in good faith to and/or have the ability to consummate a purchase of the Assets. The Creditors' Committee shall also be entitled to access such information upon execution of an agreeable confidentiality agreement.

2

4.      *Effect of Bid*.  Submission of a Competing Bid shall constitute a waiver and complete release by such bidder (a "<u>Bidder</u>") and any Affiliates of the Bidder of any rights of first refusal, options or other interests in any of the Assets.  The waiver contemplated hereby shall not apply to any secured lender exercising its rights pursuant to Section 363(k).

5.      *Lead Bid*.  The Lead Bidder has been granted certain bid protections as follows: requiring that the Sellers will not accept any bid from any other party (an "<u>Alternative Purchaser</u>") that does not exceed the Base Purchase Price by at least $185,000 plus the negotiated breakup fee of $215,000 (the "<u>Break-Up Fee</u>") for an aggregate overbid of $400,000, which is subject to these Auction and Bidding Procedures (the "<u>Alternative Minimum Purchase Price</u>") with each overbid thereafter being in increments of $50,000 (together, the "<u>Bid Protections</u>").  With respect to any overbid submitted by the Lead Bidder at the Auction, the consideration offered by the Lead Bidder shall be deemed to include the full amount of any breakup fee.  However, in the event the Lead Bidder seeks to engage in further bidding, the Lead Bidder shall be entitled to match any Competing Bid at the Auction.  Subject to approval of the Bankruptcy Court of these Bidding Procedures, the Lead Bidder has waived any rights of first refusal in the Assets to the extent inconsistent with this provision.

6.      *Auction*.  If either a secured creditor has given notice of its intent to credit bid under Section 363(k) *or* one or more Competing Bids has been received prior to the Competing Bid Deadline which is deemed to be a Qualified Bid, then **at 1:30 p.m. Prevailing Central Time on January 19, 2015**, or such other date as the Sellers may determine (subject to the requirements of the Bidding Procedures Order and other orders of the Bankruptcy Court), the Sellers shall conduct an auction of the Assets at the office of the Sellers' counsel, Bradshaw Fowler Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa 50309-8004 (the "<u>Auction</u>").  Each bid submitted at the Auction must comply with the procedures set forth herein.  Parties invoking credit bid rights under Bankruptcy Code § 363(k) shall be entitled to exercise such rights at the Auction.  Each entity seeking to bid at the Auction must (i) be the Lead Bidder or have submitted a Qualified Bid as provided above prior to the Competing Bid Deadline and (ii) appear in person at the Auction or through a duly-authorized representative at the Auction.  Unless otherwise authorized by the Sellers, the only persons that may appear at the Auction are representatives of the Sellers, the Creditors' Committee, the Lead Bidder, Qualified Bidders and secured creditors.  In the event no Qualified Bids are submitted, the Debtors will not hold the Auction and will proceed to seek approval of the Stalking Horse APA with Lead Bidder at the Sale Hearing defined below.  Notwithstanding the foregoing, in the event the Auction is not held, parties invoking credit bid rights under Bankruptcy Code § 363(k) shall be entitled to exercise such rights at the Sale Hearing subject to the provisions above.  Parties intending to exercise their § 363(k) rights in the event an Auction is not held shall provide one (1) business day notice to the Debtors of their intentions to exercise such rights at the Sale Hearing.  At the Auction, all Qualified Bids shall be made and received in one room on an open basis and all bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid shall be fully disclosed to all other bidders throughout the entire Auction.  The opening bid at the Auction shall not be less than the Alternative Minimum Purchase Price.  All offers subsequent to the opening bid at the Auction must exceed the prior offer by not less than $50,000.  Because competing bidders ("<u>Competing Bidders</u>") may bid on different assets, the Debtors can consider all bids and evaluate all bids and accept different bids for different assets.  Competing Bidders

3

are not required to assume the same assets and liabilities as the Lead Bidder. However, in determining the highest and best bid, consideration will be given to the effect of assumption and assignment of executory contracts and unexpired leases, as well as the converse, the effect of rejection of executory contracts and unexpired leases.

If the Sellers receive one or more Competing Bids prior to the Competing Bid Deadline which satisfy the bid requirements, each Qualified Bidder and the Lead Bidder shall have the right (and opportunity) to continue to improve its bid at the Auction.

The Sellers, in consultation with the secured creditors (with the exception of the Lead Bidder) and the Creditors' Committee, will select the bid at the conclusion of the Auction which they believe to be the highest or best bid for the Assets ("Winning Bid" and the party submitting such Winning Bid, the "Winning Bidder"), as well as the second-highest or otherwise best bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"). In selecting the Winning Bid and Back-Up Bid, the Sellers reserve the right, in consultation with the Creditors' Committee, to select the best bid, even if not the highest bid. The determination of the Winning Bid shall remain, however, subject to Bankruptcy Court approval. The Winning Bidder must complete and sign all agreements or other documents with the Sellers evidencing and containing the terms and conditions upon which its Winning Bid was made before the Auction is concluded.

7.    *Sale Hearing*.  The Bankruptcy Court, 110 East Court Avenue, Des Moines, Iowa, 50309, shall hold a hearing commencing on **January 30, 2015** at **9:00 a.m. prevailing Central time** or at such other hour on that date as the Court shall announce, to determine whether to approve the Winning Bid accepted by the Sellers and the Creditors'Committee as the highest or best bid at the Auction (the "Sale Hearing").  If the Lead Bidder objects to the Sellers' determination of a Qualified Bid as the highest or best bid, Lead Bidder's sole and exclusive remedy shall be to bid under protest at the Auction and have standing at the Sale Hearing to contest the determination of the Sellers of the Winning Bid.  If a Competing Bidder or the Creditors' Committee objects to the Sellers' determination of a Qualified Bid as the highest or best bid, such party may lodge a protest at the Auction and have standing at the Sale Hearing to contest the Sellers' determination of the Winning Bid.

8.    *Cure Amounts*.  No later than December 22, 2014, the Bidding Procedures Order shall be served on (i) all parties to executory contracts and unexpired leases proposed to be assumed and assigned, together with a statement of the Debtors as to the proposed cure amount due under each such contract and lease under Bankruptcy Code § 365(b) (the "Cure Amount Notice") and (ii) all parties holding liens, claims or encumbrances against assets proposed to be sold free and clear of such liens, claims and encumbrances.  All parties to executory contracts or unexpired leases that are proposed to be assumed and assigned who object to the proposed assumption and assignment and/or the proposed cure amounts must file an objection with the Bankruptcy Court and serve such objection on the Sellers, counsel for AWG, and counsel for the Creditors' Committee objecting to such assumption and assignment and/or the proposed cure amount with a statement as to the suggested cure amount and the basis therefor by no later than **January 12, 2015**.

4

9.      *Failure of Winning Bidder to Consummate Sale.*  Provided the Lead Bidder submits the Winning Bid, the closing of the sale of the Assets shall be as soon as practicable following the entry of an order of the Bankruptcy Court approving the sale but in no event later than March 2, 2015, unless extended by agreement of the Sellers and the Winning Bidder.  If a Competing Bidder submits the Winning Bid, the closing of the sale shall occur on or before March 23, 2015, unless extended by agreement of the Sellers and such Competing Bidder, subject to the requirements of any order entered by this Court.  If for any reason a Winning Bidder fails to consummate a sale of the Assets, or any part thereof, the Back-Up Bidder will automatically be deemed to have submitted the highest and best bid and the Sellers are authorized to effect the sale of the Assets, or any part thereof, to the Back-Up Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court.  If such failure to consummate the purchase is the result of a breach by the Winning Bidder, such bidder's Cash Deposit shall be forfeited to the Sellers.

After the Sale Hearing, if the Winning Bid has been selected and the sale of the Assets to the Winning Bidder, approved by the Bankruptcy Court, has closed, any Cash Deposits given by bidders who are not the Winning Bidder shall be returned as soon as practicable.  In the event the Sellers select a Qualified Bid submitted from an entity other than the Lead Bidder, the Stalking Horse APA shall be deemed terminated, the Cash Deposit shall be returned to the Lead Bidder as soon as practicable and the Break-Up Fee shall be due and payable at the closing of the sale.

10.      *The Sellers' Reservation of Rights.*  Subject to the terms and conditions of any applicable order or agreement, including, without limitation, the Interim And Final Orders (i) Approving Postpetition Financing, (ii) Authorizing Use Of Cash Collateral, (iii) Granting Security Interests And Superpriority Administrative Expense Treatment, (iv) Providing Adequate Protection, (v) Modifying Automatic Stay, (vi) and Granting Adequate Protection Pursuant To Sections 363 And 364 Of The Bankruptcy Code, and (vii) Setting Final Hearing, Pursuant To 11 U.S.C. §§ 363, 364 And 365 And Federal Rule Of Bankruptcy Procedure 4001 [Docket Nos. 45 and __], the Sellers, in consultation with the secured creditors and the Creditors' Committee, reserve their rights to (i) impose, at or prior to the Auction, additional terms and conditions on a sale of the Assets, provided that the Creditors' Committee shall be consulted on any such imposition; (ii) after consultation with the Creditors' Committee, extend the deadlines from those set forth herein, adjourn the Auction at the Auction, and/or adjourn the Sale Hearing in open court without further notice; (iii) reject all bids if, in the Sellers' reasonable judgment, in consultation with the Creditors' Committee and the secured creditors, no bid is for a fair and adequate price; provided, however, that the bid of the Lead Bidder is agreed to be a fair and adequate price; and (iv) cancel the Auction if the Court determines that the Sellers have established that the Sellers can propose a viable and feasible alternative plan of reorganization at or prior to the date of the Auction that will provide to creditors a material benefit in excess of the creditors' projected recovery as a result of the proposed sale.

5

## **EXHIBIT B**

**Sale Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **FOODS, INC.,** | ) | Case No.  14-02689-11 |
| an Iowa corporation, | ) | (Jointly Administered) |
| | ) | |
| **DAHL'S FOOD MART, INC.,** | ) | Case No.  14-02690-11 |
| an Iowa corporation, | ) | (Jointly Administered) |
| | ) | |
| **DAHL'S HOLDINGS I, LLC,** | ) | Case No.  14-02691-11 |
| an Iowa limited liability company | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

## NOTICE OF AUCTION SALE AND RELATED DEADLINES[1]

**PLEASE TAKE NOTICE THAT:**

1.      On November 9, 2014 (the "Petition Date"), Foods, Inc. d/b/a Dahl's Foods, Dahl's Food Mart, Inc., and Dahl's Holdings I, LLC (collectively, the "Debtors"), filed voluntary petitions for relief under title 11, chapter 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The cases are procedurally consolidated for joint administration under the case number 14-02689-11.

2.      On November 9, 2014, the Debtors filed the Debtors' Motion for Order (1) Approving Auction and Bidding Procedures; (2) Approving Cost and Cost and Expense Reimbursement; (3) Prescribing Manner of Notice; and (4) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers [Docket No. 19] (the "Sale Motion").

3.      On December __, 2014, the United States Bankruptcy Court for the Southern District of Iowa (the "Court")[2] entered an Order (the "Bidding Procedures Order") approving, among other things, certain relief requested in the Sale Motion including: (a) certain procedures (the "Bidding Procedures") governing the submission of competing bids for the Debtors' assets (the "Assets"), (b) authorizing the Debtors to grant certain bid protections, (c) scheduling a hearing to consider the sale of the Assets (the "Sale Hearing") and (d) and approving the form and manner of sale notices. A copy of the Bidding Procedures Order including the Bidding Procedures is attached hereto as Exhibit A.

---

[1] This Notice is qualified in its entirety by reference to the Bidding Procedures Order, a copy of which is enclosed herein and which shall control in the event of any inconsistency.

## OBJECTION TO THE SALE OF THE DEBTORS' ASSETS

4.     Objections, if any, to the relief requested in the Sale Motion that was not already granted in the Bidding Procedures Order must be: (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, (c) conform to the Local Rules of the Court, (d) include the name of the objecting party, (e) set forth the nature and amount of any claims or interests such party holds or asserts against the Debtors' estates, (f) set forth the basis and specific grounds for the objection, and (g) be filed with the Court and served on the following parties (the "Notice Parties") so that it is **received** by the Notice Parties **on or before January 12, 2015**:

**Debtors' Counsel**
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
Attn: Jeffrey D. Goetz, Esq.
(515) 246-5817
Fax : (515) 246-5808

Crowe & Dunlevy
324 North Robinson Ave.  Suite100
Oklahoma City, OK 73102
Attn: Roger A Stong, Esq.
(405) 239-6614
Fax : (405) 272-5255

**Counsel to the Official**
**Committee of Unsecured Creditors**
Freeborn & Peters LLP
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Attn: Richard S. Lauter, Esq.
(312) 360-6000,
Fax: (312) 360-6520

**Counsel to Stalking Horse Bidder**
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Attn: Mark T. Benedict, Esq.
816-983-8000
Fax:  816.983.8080

## AUCTION SALE

5.     All Competing Bids (as defined by the Bidding Procedures Order) must be submitted in writing and conform to the requirements of the Bidding Procedures so as to be **received** prior to **5:00 p.m. Prevailing Central Time on January 12, 2015** by (i) the Debtors, Foods, Inc., 4343 Merle Hay Road, Des Moines, IA 50310 and (ii) the Notice Parties.

6.     Subject to the receipt of one or more Competing Bids that are Qualifying Bids, an auction (the "Auction") of the Debtors' Assets will take place on **January 19, 2015** at **1:30 p.m. Prevailing Central Time** at the offices of Bradshaw Fowler Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, Iowa 50309-8004.

7.     Any persons interested in bidding on all or any portion of the Assets should carefully review the enclosed Bidding Procedures, which provide a detailed explanation of how and when competing bids may be submitted and the procedures and criteria by which they will be subject to consideration. The Stalking Horse APA (as defined in the Bidding Procedures) and, upon execution of an appropriate confidentiality agreement, additional information regarding the Debtors' assets may be obtained by contacting the Debtors' investment banker, The Food Partners, attention Matthew Morris, 5335 Wisconsin Avenue, NW  Suite 410, Washington, DC 20015, msmorris@thefoodpartners.com.

## SALE HEARING

8.      At a hearing to be held on **January 30, 2015** at **9:00 a.m. prevailing Central time** or at such other hour on that date as the Court shall announce, the Debtors will request, among other things, that the Court enter an order approving the sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, with such liens, claims, interests and encumbrances to attach solely to the proceeds of the respective sales, with the same validity, force and effect which such liens, claims, interests and encumbrances had against such assets prior to the sale to the bidder or bidders that, alone or in combination, submitted the highest and best Bid(s) at the Auction for the Assets, as determined by the Debtors, in consultation with the Creditors' Committee and the secured creditors (except for the Stalking Horse Bidder) (the "Winning Bidder"). At such hearing, the Debtors may also request approval of the assumption and assignment of certain contracts and leases to the Winning Bidder and approval of the cure amounts with respect thereto. The Debtors will provide a Cure Amount Notice (as defined in the Bidding Procedures) to all parties to executory contracts and unexpired leases proposed to be assumed and assigned, together with a statement of the Debtors as to the proposed cure amount due under each such contract and lease.

9.      Any non-debtor counterparty to a contract or lease that is proposed to be assumed and assigned that objects to such assumption and assignment (each an "Assumption Objection"), either on the basis of the proposed cure amount, or for any other reason, must file a written objection with this Court on or before **January 12, 2015** (the "Assumption Objection Deadline"): (a) stating the name of the non-debtor counterparty to the contract or lease; (b) identifying the particular contract or lease that is the subject of the Assumption Objection; (c) setting forth the specific factual and legal basis for the Assumption Objection; and (d) if the Assumption Objection is based on the proposed cure amount, stating the cure amount proposed to be paid to the non-debtor counterparty and the basis therefor.

10.      All Assumption Objections must be filed and served so as to be actually received by the Notice Parties on or before the Assumption Objection Deadline.

11.      If any non-debtor counterparty fails to timely file and serve an Assumption Objection to the assumption and assignment of any contract or lease set forth on the Cure Amount Notice prior to the Assumption Objection Deadline, the cure amounts proposed by the Debtors, as set forth on the Cure Amount Notice, shall be binding on such non-debtor counterparty to such contract or lease and shall constitute a final determination of the aggregate cure amounts to be paid in connection with the assumption and assignment of the contract or lease, and such non-debtor counterparty shall be forever estopped from objecting to the assumption and assignment of their contract or lease to the Winning Bidder.

12.      If a non-debtor counterparty files an Assumption Objection on or before the Assumption Objection Deadline, the Debtors and the non-debtor counterparty will seek to resolve consensually the Assumption Objection by no later than the Sale Hearing. If the Debtors and the objecting non-debtor counterparty are unable to resolve consensually the Assumption Objection prior to the Sale Hearing, the Court shall resolve the Assumption Objection at the Sale Hearing, or at a later date to be determined by the Court.

Date:  December 2, 2014                    BY ORDER OF THE COURT

/s/
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

*General Reorganization Counsel for Foods,
Inc. dba Dahl's Foods, Dahl's Food Mart,
Inc., and Dahl's Holdings I, LLC, Debtors
and Debtors-in-Possession*

SLC-7372022-9

# EXHIBIT A

**TO**

**NOTICE OF AUCTION SALE AND RELATED DEADLINES**

**("Bidding Procedures Order")**