# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | )   Lead Case No.     14-02689-als11 |
| | )   Affiliated Cases:    14-02690-als11 |
| FOODS, INC. dba DAHL'S FOODS. | )                       14-02691-als11 |

In re:

FOODS, INC. dba DAHL'S FOODS.

       Debtors and Debtors in Possession

PO Box 1218
Johnston, IA  50131

_____

And Affiliated Cases

_____

)  Lead Case No.         14-02689-als11
)  Affiliated Cases:     14-02690-als11
)                            14-02691-als11
)
)  Chapter 11 Cases (Jointly Administered)
)
)  Hon. Anita L. Shodeen
)
)  **DEBTOR'S MOTION FOR AUTHORITY**
)  **TO SELL PROPERTY OF THE**
)  **BANKRUPTCY ESTATE AT AUCTION**
)  **SALE, FREE AND CLEAR OF LIENS**
)  **AND INTERESTS**
)  **[Bankruptcy Code Section 363;**
)  **Bankruptcy Rule 6004]**
)
)  No Hearing Set

Foods, Inc. dba Dahl's Foods ("Debtor"), Debtor and Debtor in Possession herein, by and through its duly employed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., and pursuant to Bankruptcy Code Section 363, respectfully submits its Motion for Authority to Sell Property of the Bankruptcy Estate at Auction Sale, Free and Clear of Liens and Interests, and would show this Honorable Court as follows:

1.       The Debtor commenced the captioned case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on November 9, 2014 (the "Petition Date").  It's related companies, Dahl's Food Mart, Inc. ("Food Mart") and Dahl's Holdings I, LLC ("Holdings") filed voluntary Chapter 11 petitions on the same date. Subsequently, the three related companies filed motions to jointly administer the cases pursuant to

Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  On November 26, 2014, this Court

entered its Order (Docket Item 140) authorizing joint administration.  The three related companies

are duly operating as debtors in possession, pursuant to Bankruptcy Code Sections 1107 and 1108.

There is no motion or application pending for the appointment of a trustee or examiner.

2.      The instant Chapter 11 case has been duly characterized by the Debtor as a

"liquidating" Chapter 11 case, and the Debtor has so represented same to the Court and its

creditors.  Additionally, the Debtor has represented to the Court that it intends on filing a

"liquidating" plan of reorganization for approval by the Court and creditors and interested parties of

the bankruptcy estate.  The Court has set June 1, 2015 as the deadline by which the Debtor must file

its plan and disclosure statement.

4.      The Debtor is the owner of several titled, wheeled vehicles, as duly scheduled on its

Schedule B, as amended (the "Property").    A listing of the Property is more specifically detailed

on the Debtor's Schedule B (attached as Exhibit "A"), and the Debtor respectfully requests the

Court take judicial notice of same.

5.      The Debtor is informed and believes and thereupon alleges that the balance of the

Property is owned outright by the Debtor.  There are no encumbrances on said Property.

6.      The Debtor proposes to sell the Property free and clear of all liens, claims, and

encumbrances, in the ordinary course of business, and in accordance with the Bankruptcy Rule

6004 and Bankruptcy Code Sections 363(c) and (f).

7.      Filed contemporaneously herewith is an Application to Employ the auctioneer,

Craig Hilpipre, with Equipment Marketers & Appraisers (the "Auctioneer") (Docket Item 405).

Attached hereto is the Auction Proposal, attached as Exhibit "B", and the Auctioneer Agreement,

attached as Exhibit "C", and the terms of said Auction Proposal and Auctioneer Agreement are incorporated herein.

8.      The proposed sale of said vehicles will be by public auction, with webcast bidding, in the ordinary course of business, said auction to be conducted on the date, time, and place as set forth below:

Location:     111 11th St.
              West Des Moines, Iowa 50265

Date:         To be Determined

Time:         To be Determined

wherein the Debtor proposes to transfer its interest in said vehicles.

9.      Pursuant to Bankruptcy Code Sections 363(c) and (f), the Debtor desires to sell the Property free and clear of any interest other than that of the estate with all valid liens, claims, or encumbrances to attach to the proceeds of such sale. The Debtor is informed and believes that the Property is unencumbered.

10.     The Debtor believes that the proposed terms and conditions for the auction sale are fair and reasonable and in substantial conformity with similar bankruptcy auction sales in the community and are likely to realize the highest and best price at liquidation for each vehicle sold.

11.     The Auctioneer proposes to conduct the advertising to promote the auction of the Property: (1) two weekends of advertisements in the Des Moines Register; (2) an email blast from the Auctioneer's mailing list; (3) a sign along the driveway; (4) a direct mail notice to automobile dealers in the Des Moines and surrounding area; and (5) a posting of the auction information on Bidspotter.com.  The Auctioneer estimates advertising costs to be $1,500.

12.     The Property will sell best if the vehicles are inspected for mechanical condition. An important variable when buying a used vehicle is the mechanical condition and because a maintenance manager will not be present to describe the maintenance history at the auction, an inspection will enhance the sale of the vehicles.  The Debtor proposes to use the Auctioneer's recommended service center, All Pro Service Center, 1121 Railroad Avenue, Des Moines, IA 50309, to inspect the Property.  All Pro Service Center charges $70 per vehicle for the inspection.

13.     Additional fees to be charged for the auction include the Auctioneer's fee of $75 per vehicle and the rent fee for use of the building at 111 11th Street, West Des Moines, IA, which is estimated at $2,000.

WHEREFORE, the Debtor respectfully requests that this Court, after notice and opportunity for hearing pursuant to Bankruptcy Rules 2002, 6004, and 9014, approve this sale of property free and clear of liens and interests as set forth herein; and authorize the Debtor to proceed with the auction sale; and allow the Debtor's fees associated with conducting the auction; and that the Debtor have such other and further relief as is just and equitable under the circumstances.

Dated:  4/2/2015

/s/     Jeffrey D. Goetz
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

General Reorganization Counsel for Foods, Inc. dba Dahl's Foods, Dahl's Food Mart, Inc., and Dahl's Holdings I, LLC, Debtors and Debtors-in-Possession

CERTIFICATE OF SERVICE:  This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/     Barbara Warner

4

B6B (Official Form 6B) (12/07)

.

In re    Dahl's Food Mart, Inc.    ,    Case No.    14-02690
                    Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Bankers Trust checking account | - | 3,000.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >    3,000.00
(Total of this page)

___3___ continuation sheets attached to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re    Dahl's Food Mart, Inc.                                      ,    Case No.    14-02690
                                        Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

Sub-Total >                    0.00
(Total of this page)

Sheet    1    of    3    continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re    Dahl's Food Mart, Inc. _____ ,    Case No. ____14-02690_____
                                    Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2009 Chevrolet Express G1500 Truck (41,090 miles) | - | 14,239.00 |
| | | 2010 Chevrolet Impala LTZ (86,717 miles) | - | 10,048.00 |
| | | 2010 Chevrolet Impala LTZ (81,800 miles) | - | 10,395.00 |
| | | 2010 Chevrolet Express G1500 Truck (56,274 miles) | - | 14,916.00 |
| | | 2011 Chevrolet Impala LT (67,464 miles) | - | 9,721.00 |
| | | 2011 Chevrolet Impala LTZ (67,419 miles) | - | 11,337.00 |
| | | 2011 Chevrolet Impala LTZ (39,595 miles) | - | 12,915.00 |
| | | 2012 Chevrolet Impala LTZ (38,204 miles) | - | 13,113.00 |
| | | 2012 Chevrolet Impala LTZ (45,514 miles) | - | 12,741.00 |
| | | 2012 Chevrolet Impala LTZ (28,537 miles) | - | 13,565.00 |
| | | 2012 Chevrolet Impala LTZ (37,696 miles) | - | 13,133.00 |

Sub-Total >    136,123.00
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re      Dahl's Food Mart, Inc.                                              ,        Case No.      14-02690
                                        Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | 2012 Chevrolet Impala LTZ (51,609 miles)` | - | 12,431.00 |
| | | 2012 Chevrolet Impala LTZ (26,209 miles) | - | 13,671.00 |
| | | 2013 Chevrolet Impala LTZ (27,506 miles) | - | 14,650.00 |
| | | The values shown above for each of the vehicles is based upon Kelley Blue Book for a vehicle in good condition, as of November 7, 2014. | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total >   (Total of this page) | 40,752.00 |
|---|---|---|
|  | Total > | 179,875.00 |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

EMA

EQUIPMENT MARKETERS
& APPRAISERS

PO Box 369 • Cedar Falls, Iowa 50613 • Phone 319-266-3578 • Facsimile 888-804-4007
www.equipmentmarketers.com

March 19, 2015

Mr. Jeffrey D. Goetz, Esq.
Attorney at Law
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004

Re:  Auction Proposal Matter Dahl Food Mart, Inc. Chapter 11, Vehicles

Dear Mr. Goetz:

Please find the following proposal pertaining to the subject vehicles from the Dahl Food Mart bankruptcy.
This consists of the assets listed on Schedule B, attached hereto.

We propose to conduct a public auction with webcast bidding.  The location would be 111 11th Street, West
Des Moines, Iowa.  This would be a rented location with indoor rental space.  Adjacent to this building is a
large parking lot.  I have rented this facility in the past and found it to be very accommodating for an auction.
The advantages of storing these vehicles indoors are as follows:

1. Prevents the vehicles from being vandalized
2. Prevents the vehicles from damage from spring time thunderstorms
3. Prevents the potential of theft of wheels or batteries
4. Allows a public auction to be conducted regardless of the weather.

We will be able to allow the public to view these vehicles by appointment.  They will be able to drive the
vehicles out of the building and onto the parking lot for their testing.

### Advertising

Considering the quantity of assets to be sold, the advertising program will limited.  I would propose two
weekends in the Des Moines Register, an email blast from our mailing list, a sign along the driveway and a
direct mail notice to automobile dealers in the Des Moines surrounding area and posted on Bidspotter.com.

### Preparation

The location of the vehicles, will determine how the vehicles will be transported to the sales site.  It would be
preferable to have the vehicles dropped off at the auction site.  If they are at the Dahl's headquarters, we will
have the vehicles transported to the sales site.

Vehicles such as these sell best if they have been inspected for mechanical condition.  All Pro Service Center
located on 1121 Railroad Avenue.  If the court so deems, I would have this service center inspect these

vehicles.  All Pro Servicenter would charge $70.00 per vehicle for the inspection.  I would encourage this to be completed.  The most important variable when buying a used vehicle is the mechanical condition. Considering these vehicles will be sold on behalf of the Bankruptcy Court, there will not be a maintenance manager present to describe a maintenance history.  Having an inspection will enhance the sale of these vehicles.  A $70.00 per vehicle investment is extremely affordable.  All assets will be sold with out warranty or guarantee.

## Rent

The rent for the building is $2000.00 for 30 days.  The owner is Al Schorder Masonry of West Des Moines, Iowa.

## Fees

Our fees for the sale of these assets would be $75.00 per vehicle.   Our estimation for advertising costs would be $1,500.00 dollars.  Rent of the building would $2000.00 for 30 days.  If you want the vehicles inspected the cost would be 70.00 per vehicle (this is an optional consideration).

The buyer would pay a buyer's premium of 4% to the auction company.  The buyer's premium will collected on the gross bid amount per asset sold.  The buyer's premium would become the property of the auction company.

Please contact me if you have any questions.
Respectfully submitted,

Craig Hilpipre
Equipment Marketers & Appraisers

## AUCTIONEER AGREEMENT

AGREEMENT made this 26th day of March 2015, between EQUIPMENT MARKETERS, APPRAISERS & AUCTIONEERS, INC. LLC, an Iowa corporation ("Auction Company") and Dahl's Food Mart, Inc, 4343 Merle Hay Road, Des Moines, Iowa  ("Seller").

### DEFINITIONS

As used in this Agreement, the following terms shall have the respective meanings set forth below, and unless the context requires otherwise, such meanings shall be equally applicable to the singular and plural forms of the terms defined:

**"Assets"** are those specifically defined items of personal property and or real property set forth on Exhibit "A" to this Agreement which are to be sold at auction.

**"Auction"** means a sale transaction conducted by means of oral, written and or electronic exchanges between an auctioneer and the members of his or her audience, which exchanges consist of a series of invitations for offers for the purchase of goods made by the auctioneer and offers to purchase made by members of the audience and culminate in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience.  A bid procured at an Auction sale is an offer.  A sale by Auction is complete when the auctioneer so announces by the fall of the hammer or signifies such in other customary manner.

**"Auction Company"** means the Equipment Marketers & Appraisers LLC who arranges, manages, sponsors, advertises, accounts for the proceeds of, or carries out the Auction Sale at locations, including, but not limited to, any fixed location, including an auction barn, gallery, and place of business, sale barn, sale yard, sale pavilion and the continuous surroundings of each.

**"Auctioneer"** means a person authorized or licensed by law who engages in, or who by advertising or otherwise holds himself or herself out as being available to engage in, the calling for, the recognition of, and the acceptance of, offers for the purchase of goods at auction.  The Auctioneer has the right to determine the next bid increment in any Auction.

**"Auction with Reserve"** means an Auction which establishes the right of the seller to place a minimum acceptable bid on items put up at Auction.

**"Auction without Reserve"** means an Auction in which the seller does not establish a minimum bid for items put up at Auction and the sale is complete when the Auctioneer announces the sale by the fall of the hammer, regardless of whether the final accepted bid is greater than the pre-auction value.  An Auction Without Reserve involves an Auction where the property is to be sold to the highest bidder, and each bidder has the right to assume that all previous bids are genuine, and the seller so assures him; and hence the secret employment by the seller, or Puffers, is equivalent to false representation, and renders the sale voidable at the option of the purchaser.

**"Bid(s)"** means the oral or written offer(s) made by, but not limited to telephone conversation, facsimile, verbal communication, or written document, by, for or through the participating audience.  A Bid can be made before the Auction sale.

**"Buyer's Premium"** means the amount charged to a buyer over and above his accepted bid price.

**"Cashier"** means the person(s) who collects money from bidders.

**"Checker"** means the person(s) who verifies lot numbers bought with buyer's receipts.

**"Clerk"** means the person who records the bid price and bidder's numbers.

1

**"Hazardous Substance(s)"** means any hazardous material, hazardous waste, hazardous substance, or toxic material, toxic waste, or toxic substance which is or becomes regulated by any local government, the state where located, or the United States Government.  It includes without limitation, any material or substance that is (i)defined as a "hazardous substance" or "hazardous waste" under Chapter 455B, Iowa Code (or similar code provision where the property is located), (ii)petroleum and petroleum products, (iii)asbestos, (iv)designated as "hazardous substance" pursuant to Section 311 of the Federal Water Pollution Control Act (33 U.S.C. Section 1321), (v) defined as a "hazardous waste" pursuant to Section 1004 of the Federal Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq. (42 U.S.C. Section 6903), (vi)defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601 et seq. (42 U.S.C. Section 9601), or (vii)defined as a "regulated substance" pursuant to Subchapter IX, Solid Waste Disposal Act (Regulation of Underground Storage Tanks), 42 U.S.C. Section 6991 et. seq.

**"Lot Numbers"** means the number(s) assigned to the item being sold.

**"Lot"** means an individual or group of item(s) put up at auction.

**"Proxy Bid(s)"** is a bid made by an absentee bidder(s).

**"Puffing" or "By Bidding"** means the fictitious bidding by the seller, or by any person bidding on behalf of the seller or by the auctioneer.

**"Ringman"** means the person who relays bids from the bidders to the auctioneer.

**"Tie Bid"** is when two (2) bidders claim the highest offer when the bid(s) has (have) been accepted.  In such an instance, the Auctioneer has the exclusive right to determine if it is a tie bid and the right to determine if the bidding process will continue and if not, whose offer will be accepted.

WHEREAS, Seller is the owner of (or is duly authorized to contract for the public/private Auction sale of) certain Assets, located at 111 11 Street, West Des Moines, Iowa ("Premises"), which were listed on the schedule called Exhibit "A" annexed hereto, (all hereinafter collectively called the "Asset(s)").  Seller desires to sell the Assets and employ exclusively the auction services of the Auction Company who intends to conduct a public auction sale of the Assets to be held on _____, all on the terms and conditions hereinafter set forth.  Subject assets known as Automobiles from Dahl's Food Mart and all affiliates.

NOW therefore, in consideration of the mutual promises, covenants and agreements contained herein, IT IS AGREED:
**1.**    **Asset Auction & Compensation**.  Seller agrees to pay Auction Company a fee of  $75.00 per automobile sold.  The Auction Company will collect a  4% buyer's premium on all purchases from the Buyer.  This becomes the property of the Auction Company.  Auction Company will be acting only as an agent for Seller and/or principles of Seller.  Auction Company shall have the right to conduct its auction sale in such manner as is customary for a public auction by a licensed auctioneer, including the right to provide such terms and conditions as it may, in its discretion, deem appropriate, to include all items at the auction will be sold absolute and no buy backs or bid-ins will be allowed.  Seller acknowledges exact prices are not predictable at public auctions and accepts auction results without recourse towards Auction Company.  _____(initials)

**2.**    **Expenses**.

**(A)  Advertising**.  Auctioneer shall advertise the auction sale in the Des Moines Register, wed site, and email blast.  Auction Company will handle all aspects of the advertising program.
Seller agrees to pay for all advertising costs.  The following estimate is not a guarantee of cost.  Actual advertising costs may be more or less than estimated amount.  The estimated cost of advertising is $1500.00.  Seller acknowledges this is only an estimate and agrees to pay actual cost.  _____ (initials)
**(B)  Reimbursable Out of Pocket Expenses**.  Seller agrees to reimburse Auction Company for out of pocket expenses including building rent and inspections of the automobiles.
Seller acknowledges to pay actual cost.  _____(initials)

2

**3. Disbursement.** Except as to any amounts held because of disputes, Auction Company will mail net proceeds on or before _____. Auction Company agrees to provide proof of all advertising expenses. If disputes over proceeds are not settled by delivery ate, the subject proceeds will be delivered as mentioned above or at their earliest legal date.

**4. Auction Without Reserve**. The auction sale will be without reserve except as to those specified items set forth as __N/A. Auction Company will allow no puffing or by bidding, nor will any person procuring a bid for Seller be allowed. If Seller is found to have repurchased any item, or procured any bids, Seller will allow the buying audience to have the option to pursue any remedy available at law, or in equity, and Auction Company will be authorized to again place the disputed article of goods back up for auction and to sell the article of goods to the highest bidder. If as a subsequent sale, the item sells for a lower price, Auction Company or buying audience will not be liable for the difference for the lower price. Additionally, Auction Company will pursue any remedy available at law to regain costs incurred to Auction Company due to such actions.

**5. Assets To Be Sold**. Assets governed by this agreement must be sold at the auction. Any Assets to be added to the sale after the signing of this agreement must be submitted in writing to Auction Company. Additional Assets are subject to the terms and conditions of this agreement. Any item withdrawn after the signing of this agreement, without Auction Company's written approval, will be subject to legal costs incurred to remedy, and/or compensation to Auction Company due to such actions.

**6. Pre-Auction Sales**. Any Assets sold or released before the auction, and after the signing of this agreement, must have written permission of Auction Company. Auction Company will receive the agreed upon commission unless, as stipulated otherwise on all Assets sold, plus expenses incurred.

**7. Non-cancellation**. The auction may not be canceled without the prior written approval of Auction Company. Seller may not stop or in any way interfere with the proposed auction. If the auction is stopped by Seller or its agents , Seller shall be liable to Auction Company for its actual, reasonable, out-of-pocket expenses incurred relating to the auction. If any dispute arises among lien holders or creditors of Seller so that the auction may not go forward or any particular item may not be sold, to the extent that any item is interfered with or cannot be sold, Seller shall cause the return to the Auction Company of the applicable amount of money advanced by Auction Company in respect to any such item and the ownership of such item shall be reconveyed to Seller. In order to insure against this eventuality, the Auction Company may withhold delivery of any future amounts that may be due to Seller and T&D pursuant to Paragraph 1 above for the net proceeds of the sale for a period of 45 days in order to resolve any disputes or problems. If any such disputes are not resolved, Auction Company is authorized to commence any interpleader action and to deposit the funds into a Court of competent jurisdiction until the dispute is resolved. Any costs or expenses, including reasonable attorney fees, incurred by the Auction Company in connection with any such dispute arising out of the breach by Seller of its obligations under this agreement shall be deducted from any net sale proceeds that may be due Seller.

**8. (A) Seller's Representations and Warranties**. The Seller represents and warrants to Auction Company that the Assets being auctioned and sold shall be free and clear of all liens, attachments, encumbrances, and/or levies and that there are no tax liens in existence as against any of the Assets being sold and auctioned. Seller warrants to Auction Company that the Seller has disclosed all liens and claims known and acknowledges Auction Company's reliance upon Seller's disclosures. To the extent Auction Company deems necessary, Auction Company is given permission to review, check and verify any information provided by Seller and Seller waives all confidentiality disclosures as to Auction Company. All expenses incurred by Auction Company to check or verify the accuracy of any information provided by Seller shall be charged to Seller and reimbursed to Auction Company by Seller.

**(B)** To the best of Sellers knowledge and belief, there are no existing violations of, and is in compliance with, federal, state, or local laws, ordinances, rules, regulations or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production, or disposal of Hazardous substances (as such term is hereinafter defined), at the property and there have been no actions commenced or threatened by any governmental agency or party for such violations at the property, nor has the property been used for storage or

3

disposal of Hazardous Substances, nor does the property contain any toxic, contaminated or Hazardous materials or substances, except as have been disclosed to Auction Company prior to entering this Agreement.

        **(C)**    Seller warrants and represents to Auction Company that Seller's title to the Assets being sold are marketable and insurable, that Seller has the full power and authority to enter into this agreement, that Seller has the full right and authority to convey title to the Assets to any duly authorized buyer, that Seller has consent from any secured lender authorizing the sale of the property and agreements are in place with the Lender for the release of any security agreements. Seller hereby indemnifies Auction Company from any claims brought by third parties based on Seller's failure to disclose the existence of any security agreements or secured claims against the collateral, such indemnity to include reimbursement for any attorney fees and costs incurred by Auctioneer in defense of any such claim.

      **9.**    **Vehicle Sales**. Sales of over the road motorized vehicles or any chattels, which may be titled and/or have registration certificate will have an up-to-date registration certificate and title, clear of any and all liens, attachments or encumbrances. If any vehicle is subject to a pre-existing lien, Seller shall provide to Auction Company proof of evidence that said lien has been satisfied and/or that said secured creditor agrees to the sale of the vehicle and agrees to the payment of the Auction Company's commission and fees. Seller shall agree to indemnify and hold Auction Company harmless on all chattels sold. Seller will be responsible and liable to insure proper titles, registrations and other documentation and paperwork required by law in order to transfer title of said chattels, and agrees to fill out and to sign and to transfer title and/or registration to new purchasers. Seller will be liable for all damages and/or fees, and shall hold Auction Company harmless therefrom, and indemnify Auction Company against any and all losses or expenses, including attorney fees.

      **10.**    **Security Interests**. If any Assets to be sold are subject to liens, attachments or encumbrances, Seller shall furnish Auction Company at least fourteen (14) working days prior to the auction sale date, sufficient written instructions regarding the sale or disposition of the encumbered property, and instructions regarding the dispositions of the proceeds received therefrom. If any disputes arise, the Auction Company reserve the right to place secured creditor's name, in addition to Seller's name on any check representing the proceeds from the sale of any secured collateral.

      **11.**    **Lien on Proceeds**. Auction Company shall have a lien upon the proceeds of the sale of the Assets for all commission and expenses due it, including reasonable costs of collection, including attorney fees, if any, incurred by Auction Company and arising out of a breach by Seller under this Agreement, and Seller hereby grants to Auction Company a security interest in and to said proceeds. Seller agrees further, upon Auction Company's request, to execute any and all security interest documents deemed necessary by Auction Company to perfect its lien on proceeds.

      **12.**    **Rejection of Items**. If for any reason a Buyer rejects, refuses or abandons any item purchased at the auction, the Auction Company will not be responsible to pay the Seller the bid price. Auction Company may then attempt, but not be obligated to resell the item to any co-bidders if co-bidders can be found and are still interested and available. Seller may request Auction Company, at its option, to sell the item elsewhere at a later date upon such appropriate terms as the parties may agree. Title or ownership of the item will remain with Seller until the time the item is subsequently sold.

      **13.**    **Pictures & Videos**. Auction Company reserve and Seller grants the right to publish prices on goods sold or use pictures or videos of the subject auction for their usage, without obligation to Seller.

      **14.**    **Entire Agreement & Choice of Law**. This Agreement, together with the Exhibit annexed hereto as Schedule "A". contain the entire agreement of the parties hereto with respect to the subject matter hereof. No amendment, interpretation or waiver of any other provision of this Agreement shall be effective unless made in writing and signed by the parties to this Agreement. If any of the provisions of this Agreement are held to be invalid or unenforceable by any judgment or order of a court of competent jurisdiction, the remainder of this Agreement shall not be affected and this Agreement shall be carried out as nearly as possible according to its original terms and intent. This Agreement shall be governed by the laws of the State of Iowa.

**15.** **Miscellaneous**. If any severable provisions of this agreement are held to be invalid or unenforceable by any judgment or order of a Court of competent jurisdiction, the remainder of this agreement shall not be affected by such judgement or order, and this agreement shall be carried out as nearly as possible according to its original terms and intent.

Seller and Auctioneer agree that they have had the opportunity to review this agreement and have had an opportunity to be advised as to its contents, requirements and liabilities, and have signed this agreement fully understanding their respective rights, responsibilities and obligations as set forth herein.

The captions contained in this agreement are for reference purposes only, and shall not affect or be construed to affect the meaning of any provision of this agreement.

**16.** **Execution.** This agreement may be executed upon counterparts and becomes effective when both Seller and Buyer have signed, whether on the same or separate copies of this Agreement. Further, signatures which have been photocopied or sent by facsimile or scanned and sent electronically shall have the same force and effect as original signatures.

**Equipment Marketers & Appraisers**
**("Auction Company")**

By: _____    Date: _____
("Auction Company")

By:_____    Date: _____
("Seller")

5