# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: ) | Lead Case No.:   14-02689-als-11 |
| ) | Affiliated Cases:  14-02690-als-11 |
| **FOODS, INC. dba DAHL'S FOODS** ) | 14-02691-als-11 |
| ) | |
| Debtor and Debtor-in-Possession. ) | Chapter 11 (Jointly Administered) |
| ) | |
| P.O. Box 1218Johnston, IA  50131 ) | Hon.  Anita L. Shodeen |
| EIN: 42-0803702 ) | |
| ) | **DEBTOR FOODS, INC. FIRST** |
| ) | **AMENDED COMBINED PLAN OF** |
| ) | **REORGANIZATION AND** |
| ) | **DISCLOSURE STATEMENT DATED** |
| ) | **JULY 10AUGUST 7, 2015** |
| ) | |
| ) | No Hearing Set |

Jeffrey D. Goetz, Esq., IS# 9999366
Krystal R. Mikkileneni, Esq., IS# 99999339997703
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

General Reorganization Counsel for Debtor
And Debtor-in-Possession and Plan Proponent

Richard S. Lauter, Esq.
Devon J. Eggert, Esq.
Freeborn & Peters, LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
312/360-6000
312/360-6520 FAX
rlauter@freeborn.com

Counsel for the Official Committee of
Unsecured Creditors and Co-Plan Proponent

Table of Contents

I.    INTRODUCTION ....................................................................................................4
   A.   Purpose of This Document .................................................................................. 4
   B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ........................ 5
      1.   Time and Place of the Hearing to Confirm the Plan ................................................. 5
      2.   Deadline for Voting to Accept or Reject the Plan .................................................. 5
      3.   Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the
           Plan ............................................................................................... 5
      4.   Identity of Person to Contact for More Information .............................................. 6
II.   BACKGROUND ...................................................................................................6
   A.   Description and History of the Debtor's Business ................................................... 6
   B.   Current and Former Managers, Officers, Directors and Shareholders of the    Debtor ...... 7
   C.   Events Leading to the Debtor's Chapter 11 Filing .................................................. 7
   D.   Significant Events During the Bankruptcy Case ..................................................... 8
   E.   Post-Petition Sale of Assets of the Bankruptcy Estate ............................................. 8
   F.   Projected Recovery of Avoidable Transfers ......................................................... 9
   G.   Claims Objections ........................................................................................ 9
   H.   Current and Historical Financial Statements and Reports ......................................... 9
III.  THE PLAN OF REORGANIZATION AND TREATMENT OF UNCLASSIFIED AND
      CLASSIFIED CLAIMS AND EQUITY INTERESTS ....................................................9
   A.   What is the Purpose of the Plan of Reorganization? ............................................... 9
   B.   What is the Effective Date of the Plan? ............................................................. 10
   C.   Explanation of and Treatment of UnClassified Claims ........................................... 10
      1.   Administrative Expenses .......................................................................... 10
      2.   Priority Tax Claims .............................................................................. 11
   D.   Explanation and Treatment of Classified Claims and Equity Interests ......................... 11
      1.   Classes of Secured Claims (Class 1) ............................................................ 11
      2.   Classes of Priority Non-Tax Unsecured Claims (Class 2) ..................................... 12
      3.   Classes of General Unsecured Claims (Classes 3 and 4) ....................................... 12
      4.   Class of Equity Interest Holders (Class 5) ..................................................... 12
   E.   Treatment of U.S. Trustee Fees ...................................................................... 14
IV.   ALLOWANCE AND DISALLOWANCE OF CLAIMS ...............................................14
   A.   Disputed Claims ........................................................................................ 14
   B.   Settlement of Disputed Claims ....................................................................... 15
V.    PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........15
   A.   Assumed Executory Contracts and Unexpired Leases ........................................... 15
   B.   Rejected Executory Contracts and Unexpired Leases ........................................... 15
VI.   MEANS OF IMPLEMENTING THE PLAN ........................................................15
   A.   In General ............................................................................................... 15
   B.   Source of Payments .................................................................................... 17
   C.   Cessation of the Debtor's Business Operations ................................................... 17
   D.   Post-Effective Date Operations of the Debtor ..................................................... 17
   E.   Retention of Liens ...................................................................................... 17

F.    Post-Confirmation Compensation of Professional Persons ............................................. 17
G.    All Post-Petition Section 1129(a)(4) Payments Subject to Bankruptcy Court   Review . 18
I.    Default............................................................................................................................ 18
    1.    Events of Default ................................................................................ 18
    2.    Cure of Prior Defaults ...................................................................... 18
    3.    Consequences of Default ................................................................... 19
J.    Post-Confirmation Management ................................................................................... 20
K.    Risk Factors ................................................................................................................. 20
L.    Tax Consequences of Plan ........................................................................................... 20
M.    The Dahl's Liquidating Trust ...................................................................................... 21
N.    Termination of the Dahl's Employee Stock Ownership Plan and Trust......................... 22
O.    Termination of the Dahl's 401(k) Plan ........................................................................ 23
P.    Unclaimed Funds ......................................................................................................... 23
VII.    CONFIRMATION REQUIREMENTS AND PROCEDURES ...................................25
A.    Overview of Requirements .......................................................................................... 25
B.    Who May Vote or Object ............................................................................................. 25
C.    What Is an Allowed Claim or an Allowed Equity Interest? ............................................ 26
D.    What Is an Impaired Claim or Impaired Equity Interest?............................................. 26
E.    Who is Not Entitled to Vote?........................................................................................ 26
F.    Who Can Vote in More Than One Class? ...................................................................... 27
G.    Votes Necessary to Confirm the Plan ........................................................................... 27
    1.    Votes Necessary for a Class to Accept the Plan ................................ 27
    2.    Treatment of Non-accepting Classes ................................................ 27
H.    Liquidation Analysis .................................................................................................... 27
I.    No Need to Show Ability to Make Future Plan Payments and Operate     Without Further
Reorganization ...................................................................................................................... 30
VIII.    EFFECT OF CONFIRMATION OF PLAN ...........................................................30
A.    Discharge .................................................................................................................... 30
B.    Binding Effect ............................................................................................................. 30
C.    Vesting of Property ...................................................................................................... 30
D.    Assets Free and Clear of Liens .................................................................................... 30
E.    Modification of the Plan .............................................................................................. 31
F.    Final Decree ................................................................................................................ 31
IX.    GENERAL PROVISIONS ......................................................................................31
A.    Definitions and Rules of Construction .......................................................................... 31
B.    Captions and Headings ................................................................................................ 31
C.    Corporate Governance ................................................................................................ 31
D.    Severability ................................................................................................................. 31
E.    Governing Law ............................................................................................................ 32
F.    Successors and Assigns................................................................................................. 32
G.    Plan Is Self-Executing.................................................................................................. 32
H.    Post-Confirmation Jurisdiction ................................................................................... 32

## I.    INTRODUCTION

Foods, Inc. ~~fdbadba~~ Dahl's Foods ("Dahl's~~)~~")[1], is the Debtor in this Chapter 11 Bankruptcy Case.  On November 9, 2014 (the "Petition Date"), Dahl's filed its Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. § 101 et seq., in the United States Bankruptcy Court for the Southern District of Iowa (the "Bankruptcy Court" or "Court").

This is Dahl's (the "Debtor" or the "Debtor-in-Possession") First Amended Combined Plan and Disclosure Statement Dated ~~July 10~~August 7, 2015 (for ease of reference, the Combined Plan and Disclosure Statement will be referred to as the "Plan").  This Plan is proposed by both the Debtor and the Official Committee of Unsecured Creditors ("Official Committee") appointed in the Bankruptcy Case (the "Plan Proponent" and "Plan Co-Proponent" respectively, and collectively the "Plan Proponents")

This Plan is filed under the Code and proposes to pay Creditors of the Debtor primarily from the liquidation and sale of assets of the Bankruptcy Estate.  This Plan provides for Five (5) Classes of Claims: one Class of priority non-tax Claims; One (1) Class of Secured Claims, within which there are Five (5) sub-Classes;  One (1) Class of Priority Non-Tax Claims; Two (2) Classes of General Unsecured Claims; and One (1) Class of Equity Interest holders.  Unsecured Creditors holding Allowed Priority Tax Claims and Allowed Administrative Expense Claims, and Unsecured Creditors holding Allowed Claims in Classes Three and Four  will receive payments from Cash on hand on the Effective Date, and from the net proceeds, if any, from avoidance of any preferential payments and/or fraudulent transfers, continued liquidation of the Debtor's non-real estate and non-operational assets, and/or Claims against the Debtor's Directors & Officers and Insurance Policies.  Based on the Debtor's best and current information as of the filing of this Plan, the Debtor anticipates that Creditors with Allowed Claims in Class Three may eventually receive as much as a 100% Dividend under this Plan.

All Creditors holding Classified Claims and holders of Equity Interests should refer to Article III, Section D of this Plan for information regarding the precise treatment of their Claims.

This Plan also provides detailed information regarding the terms for payment of the Debtor's Creditors and other information designed to assist Creditors and holders of Equity Interests  in determining whether to accept the Plan.  ***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

### A.    Purpose of This Document

This Plan describes:

- The Debtor and significant events during the Bankruptcy Case.

---

[1] All capitalized terms in this Combined Plan and Disclosure Statement are defined in Appendix 1 attached hereto and incorporated by reference herein.

- Historical information regarding the Debtor and the events leading to its bankruptcy filing.
- How the Plan proposes to treat Claims or Equity Interests of the type you hold (i.e., what you will receive on your Claim or Equity Interest if the Plan is confirmed).
- Who can vote on or object to the Plan.
- What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan.
- Why the Debtor believes the Plan is feasible, and how the treatment of your Claim or Equity Interest under the Plan compares to what you would receive on your Claim or Equity Interest in a hypothetical Chapter 7 liquidation.
- The effect of confirmation of the Plan.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan and the Debtor has asked to Court to "conditionally approve" the Disclosure Statement pursuant to Bankruptcy Code Sections 105(d) and 1125(f).  ~~This section describes~~These sections describe the procedures under which the Plan will or will not be confirmed.

1.      Time and Place of the Hearing to Confirm the Plan

The hearing at which the Court will consider confirmation of the Plan and/or final approval of the Disclosure Statement will be set by a separate Order and Notice of Hearing and Deadlines accompanying this Plan.

2.      Deadline for Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the Plan, you will vote on the enclosed Ballot and return the Ballot in the enclosed envelope to Jeffrey D. Goetz, Esq., Bradshaw Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, IA 50309. See Article VII below for a discussion of voting eligibility requirements.

The Ballot will advise you by what date and time your Ballot must be received by, or your Ballot may not be counted.

3.      Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan

Objections to final approval of the Disclosure Statement and confirmation of the Plan must be filed with the Court and served upon the Debtor's General Reorganization Counsel, counsel for the Official Committee, and the Office of the United States Trustee and all other Creditors and/or interested parties who have filed notices of appearances and requests for special notice, by the deadline provided for in the Court's Order and Notice of Deadlines and Hearing accompanying this Plan.

4.      Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact the Chief Executive and Restructuring Officer of the Debtor, Dean Longnecker.

## II.      BACKGROUND

### A.      Description and History of the Debtor's Business

Dahl's was founded in 1931 by W.T. Dahl, with the opening of his first grocery store in Des Moines, and was formally organized as a corporate entity in 1958 by five key Dahl's employees.

At the time of the filing of the Bankruptcy Case, Dahl's owned and/or operated 10 full-line grocery stores in and around the Des Moines area.  Three of the stores were owned by Dahl's and the other seven were leased.

Since the 1970s, Dahl's has been "employee-owned", pursuant to an Employee Stock Ownership Plan (the "ESOP") with 97% of the ownership of the Debtor held by the ESOP.  The remaining 3% is owned by certain past members of management, and other former employees.

Individual grocery store square footage ranged from 28,820 to 70,000, with average square footage of 55,188.  For the 52 weeks ended June 28, 2014, Dahl's generated sales of approximately $136.8 million.  Prior to cessation of business operations, Dahl's employed over 950 people.

Dahl's corporate offices were located on the second floor of the Merle Hay store.  Craig Moore was hired in January 2014 as Chief Restructuring Officer and named Chief Executive Officer in April of 2014 to stabilize the business and lead turnaround efforts.  Upon cessation of business operations, Dean Longnecker was appointed as both Chief Executive Officer and Chief Restructuring Officer.

In June of 2011, Dahl's signed a supply agreement with Associated Wholesale Grocers, Inc. ("AWG").  Dahl's also leased or subleased five of its stores from AWG (Fleur Drive, Ingersoll, Beaver, Johnston, and West Hickman).

Property Summary:

| Store Number | Store Name | Total Square Footage | Owned or Leased |
|---|---|---|---|
| 4 | Hickman | 42,192 | Owned |
| 5 | Euclid | 43,500 | Owned |
| 17 | EP True | 55,980 | Owned |
| 3 | Fleur Drive | 53,468 | Leased |
| 7 | Ingersoll | 70,000 | Leased |
| 8 | Beaver | 28,820 | Leased |

| 15 | Merle Hay | 55,000 | Leased |
| 18 | Johnston | 67,264 | Leased |
| 19 | West Hickman | 66,656 | Leased |
| 20 | East 33rd | 65,000 | Leased |

**B.     Current and Former Managers, Officers, Directors and Shareholders of the Debtor**

A listing of current and former officers, directors and shareholders, and their respective equity ownership interest in the Debtor, is attached hereto as Exhibit "A" and is incorporated by reference herein.

**C.     Events Leading to the Debtor's Chapter 11 Filing**

Since 2011, Dahl's has been a member of AWG, which is a Kansas corporation doing business in a cooperative manner.  AWG supplies its members a full line of groceries and supermarket products.  Prior to cessation of its business operations, Dahl's was primarily supplied by AWG, purchasing approximately 85% of its grocery and supermarket products from AWG which ~~amountedto~~amounted to approximately 65% of its total purchases of goods for sale in its stores.

In order to finance its operations, Dahl's entered into a series of transactions with AWG, including without limitation, a borrowing relationship, a supply agreement under which it purchased products from AWG for sale in the stores, and certain lease transactions whereby Dahl's leased space from AWG for the operation of its stores.  The Debtor maintained an open account by which AWG provided additional revolving credit to the Debtor for its weekly purchase of groceries.

Over time, the Debtor experienced increased competition in the markets in which it did business.  That competition eroded sales.  The Debtor was slow to recognize the competitive threat and to make the operational changes necessary to remain viable.  During this period, the Debtor over-leveraged its assets as its revenues declined and became undercapitalized.  To deal with the increased debt obligations, the Debtor embarked on asset sales and store closings of unprofitable stores to reduce debt, in an effort to continue its businesses as going-concerns.  It also entered into its relationship with AWG to lower its costs and obtain additional merchandising and financial support from its key supplier.

In 2013, the Debtor retained The Food Partners to assist the Debtor in strategic decision making, and to assist in the marketing and sale of certain of the Debtor's assets.  Additionally, the Debtor hired a new CEO, Craig Moore, to assist in the operational turn-around.  While operations improved, the turn-around took more time than originally anticipated.  Moreover, the asset sales were slower to materialize and took longer to close than planned, resulting in additional operational losses.  Despite these efforts, the Debtor's Cash position has continued to erode, and the filing of the Petition became necessary to preserve the value of the Debtor's businesses.

**D.      Significant Events During the Bankruptcy Case**

On November 9, 2014 (the "Petition Date"), Foods, Inc., Dahl's Food Mart, Inc., and Dahl's Holdings I, LLC filed separate Voluntary Chapter 11Petitions.  Dahl's Food Mart, Inc. and Dahl's Holdings I, LLC are wholly-owned subsidiaries of Foods, Inc. The three Bankruptcy Cases were consolidated on November 26, 2014 with the lead Bankruptcy Case as Foods, Inc.'s Bankruptcy Case, Case No. 14-02689-als11.  Filed contemporaneously with this Plan is the Debtor's motions to have the Dahl's Food Mart, Inc. and Dahl's Holdings I, LLC Bankruptcy Cases dismissed, on the basis that both entities no longer have any assets to administer an in the case of Dahl's Food Mart, Inc., there are no Creditors owed any money.

A summary of the events that have occurred since the Petition Date are detailed and itemized in a copy of the Bankruptcy Court's Docket attached hereto as Exhibit "B" and incorporated by reference herein.  Access to all documents and pleadings referenced on the Bankruptcy Court Docket are available from the Clerk of the Bankruptcy Court, online through Public Access to the Court's Electronic Records ("PACER") (if you have a PACER account,) or at no charge by requesting a copy of any document or pleading from the Debtor's General Reorganization Counsel.

**E.      Post-Petition Sale of Assets of the Bankruptcy Estate**

The Debtor filed a Motion with the Court seeking to sell substantially all of its real estate and operational assets at a "Stalking Horse" Auction, pursuant to Bidding Procedures Motion and an Asset Purchase Agreement.  On December 3, 2014, the Court entered its Order approving the Debtor's Bidding Procedures (Docket Item 157), which provided for the Auction to be commenced by no later than January 19, 2015 and completed by January 21, 2015.

The Debtor conducted the Auction of substantially all of its real estate and operational assets on January 19, 2015.  The Debtor filed an emergency motion for modification of the Court's order approving the bid procedures on January 21, 2015 in order to extend the deadline for completion of the auction.  The Court entered an Order on January 22, 2015 extending the deadline to January 23, 2015.  A second round of the auction was conducted on January 23, 2015 for the sale of the Debtor's pharmacy prescriptions and pharmaceutical inventory.  The Court approved the sales of the Debtor's assets.

The Debtor's store at 5003 EP True Parkway, West Des Moines, Iowa (the "EP True Store") and the equipment in the EP True Store were sold to Kum & Go, L.C.  The Debtor's store at 8700 Hickman Road, Clive, Iowa (the "8700 Hickman Store") was sold to Equity Ventures Commercial Development, L.C.  The Debtor's pharmacy prescriptions and pharmacy inventory at the 8700 Hickman Store, EP True Store, and 3400 East 33rd Street, Des Moines, Iowa (the "East 33rd Street Store") were sold to Hy-Vee, Inc.  The Debtor's remaining assets were sold to AWG, pursuant to the Second Amended Asset Purchase Agreement between AWG and the Debtors (the "AWG APA").

**F.      Projected Recovery of Avoidable Transfers**

The Debtor's Plan contemplates that the Trustee of the Dahl's Liquidating Trust, and the professionals retained to assist the Trustee of the Dahl's Liquidating Trust (the "Liquidating Trust" or the "Trust") will conduct an analysis of all potentially avoidable preference payments and other fraudulent transfers.  Depending on the outcome and results of any disputes involving any remaining assets of the Debtor, and the Trust's success in pursuit of the preference Claims and actions, there may be a dividend paid on account of the Allowed Claims of General Unsecured Creditors in Classes 3 and 4.   If you received a payment or other transfer within 90 days of the Petition Date or other transfer avoidable under the Code, the Trust may seek to avoid such transfer.

**G.      Claims Objections**

Pursuant to the Court's Notice to all Creditors (Docket Item 60) filed on November 14, 2014, the Bar Date for timely filing Proofs of Claim in the Bankruptcy Case was set for March 4, 2015.

Except to the extent that a Claim is already allowed pursuant to a final non-appealable order, the Debtor and/or the Trust reserve the right to object to Claims within Sixty (60) days of the Effective Date of the Plan, which date may be extended by further order of the Court. Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim is later filed and upheld.

The Debtor and/or the Trust will review all Claims and, where possible, attempt to settle or resolve disputed, contingent and/or unliquidated Claims as appropriate.

**H.      Current and Historical Financial Statements and Reports**

Attached hereto as Exhibit "C" and incorporated by reference herein is the Debtor's audited consolidated financial statements as of September 28, 2013.  Since the Petition Date, the Debtor has been preparing and filing Monthly Operating Reports.  Attached hereto as Exhibit "D" is the Debtor's most recently filed Monthly Operating Report for the month ending ~~May 31~~June 30, 2015.

**III.      THE PLAN OF REORGANIZATION AND TREATMENT OF UNCLASSIFIED AND CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.      What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places Claims and Equity Interests in various Classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims or Equity Interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.      What is the Effective Date of the Plan?**

The Effective Date of this Plan shall be fourteen (14) days after the Confirmation Order becoming a final, non-appealable order, unless extended by an Order of the Bankruptcy Court. If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after that date on which no stay of the Confirmation Order is in effect, unless the Confirmation Order has been vacated.

**C.      Explanation of and Treatment of Unclassified Claims**

Certain types of Claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  Accordingly, the Plan Proponents have not placed the following Claims in any Class:

      1.      Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code § 507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the Petition Date for which a Code § 503(b)(9) Claim has been filed and allowed.  The Code requires that each Administrative Expense Claim be paid on the Effective Date of the Plan, unless the holder of the Claim agrees to different and/or less favorable treatment.

On December 4, 2014, the Debtor filed with the Court a Motion Pursuant to Bankruptcy Code Sections 503 and 105(a) for Approval of Procedures for the Treatment of Claims Asserted Under Bankruptcy Code Section 503(b)(9) (Docket Item 166).  The Court granted the Debtor's Motion on December 8, 2014 (Docket Item 172).  Pursuant to the 503(b)(9) procedures, the Debtor filed its Bankruptcy Code Section 503(b)(9) Report with the Court on January 28, 2015 (Docket Items 293 & 294).  Following good faith settlement negotiations with Creditors holding 503(b)(9) Claims, the Debtor filed an Amended Bankruptcy Code Section 503(b)(9) Report on February 11, 2015 (Docket Item 333) and a Second Amended Bankruptcy Code Section 503(b)(9) Report on February 26, 2015 (Docket Item 349).  The Debtor's Second Amended 503(b)(9) Report was approved by the Court on March 20, 2015 (Docket Item 392).  Attached hereto as Exhibit "H" is a listing of all allowed 503(b)(9) Claims.

Further, following a hearing on motions for administrative expenses and objections thereto, the Court entered an Order granting such motions for administrative expenses on March 20, 2015 (Docket Item 393).

All Allowed Administrative Expense Claims will be paid Pro Rata.  If there are insufficient funds on hand to pay the Allowed Administrative Expense Claims in full, the balance owed shall be paid by the Trust as additional funds are collected and received by the Trust.  The Debtor believes there will be sufficient Cash on hand to pay all Allowed Administrative Expense Claims in full on the Effective Date

10

The following chart lists the Debtor's estimated administrative expenses and their treatment under this Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Allowed Bankruptcy Code Sec. 503(b)(9) Claims | $1,077,~~984.56~~493.00 | Paid in full on or before the Effective Date of the Plan, or according to such different and/or less favorable terms by agreement. |
| Post-Petition Ordinary Course of Business Claims | $~~0~~255,000.00 | Paid in full on or before the Effective Date of the Plan, or according to such different and/or less favorable terms by agreement. |
| Allowed Executory Contract and Unexpired Lease Assumption Cure Claim | $~~70,385.32~~71,432.00 | Paid in full on or before the Effective Date of the Plan, or according to such different and/or less favorable terms by agreement. |
| Professional Fees, as approved by the Court (estimated) | $140,000.00 | Allowed Professional Fees will be paid 100% of what is allowed by the Court on the Effective Date of the Plan or the entry of a Final Order approving such Claim,  Any amounts subsequently approved by the Court shall be paid within 14 days of the Court's approval. |
| Office of the U.S. Trustee Fees | $1,625.00 | Paid in full on the Effective Date of the Plan |
| TOTAL | $1,~~289,994.88~~545,550.00 | |

### 2.    Priority Tax Claims

Priority Tax Claims are secured real estate property taxes and unsecured sales and use taxes described by Code § 507(a)(8). Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees to different and/or less favorable treatment, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

There are no known § 507(a)(8) Priority Tax Claims.

### D.    Explanation and Treatment of Classified Claims and Equity Interests

### 1.    Classes of Secured Claims (Class 1)

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy

estate (or that are subject to setoff) to the extent allowed as Secured Claims under Code § 506. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a Class 3 General Unsecured Claim.

2.        Classes of Priority Non-Tax Unsecured Claims (Class 2)

Certain Priority Non-Tax Claims that are referred to in Code §§ 507(a)(1), (4), (5), (6), and (7) are required to be placed in Classes. The Code requires that each holder of such an Allowed Claim receive Cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a Class of holders of such Claims may vote to accept different and/or less favorable treatment.

The Debtor does not believe there are any Class 2 Non-Tax Priority Claims.

3.        Classes of General Unsecured Claims (Classes 3 and 4)

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under Code § 507(a).

4.        Class of Equity Interest Holders (Class 5)

Holders of Equity Interests are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation or a limited liability company, entities or individuals holding preferred or common stock are equity interest holders. A list of the equity interest holders, otherwise referred to as the shareholders, are included in Exhibit "E".

Unless all holders of Allowed Claims in Classes 1, 2, 3 and 4 are paid in full, holders of Allowed Class 5 Equity Interests will not receive any payment or dividend on account of their respective Equity Interests.

5.        Overview - Treatment of Classified Claims and Interests under Plan

classified Claims and Equity Interests are treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1a – Allowed Secured Claim of AWG | Unimpaired | Class 1a has been paid in full during the pendency of the case, from the liquidation of its collateral. The Class 1a Claim holder shall not receive any further payment or dividend under the Plan. |
| Class 1b – Allowed Secured Mechanics Lien Claim of Allied Construction Services, Inc. – EP True Store | Unimpaired | Class 1b has been paid in full during the pendency of the case, from the liquidation of its collateral. The Class 1b Claim holder shall not receive any further payment in dividend under the Plan. |

| | | |
|---|---|---|
| Class 1c – Allowed Secured Mechanics Lien Claim of Allied Construction Services, Inc. – Merle Hay Store | Impaired | The Class 1c Claim shall be paid in full on the Effective Date of the Plan. |
| Class 1d – Allowed Secured Mechanics Lien Claim of Control Installations of Iowa, Inc. – Beaver Ave. Store | Unimpaired | Class 1b has been paid in full during the pendency of the case, from the liquidation of its collateral.  The Class 1d1b Claim holder shall not receive any further payment in dividend under the Plan. |
| Class 1e – Allowed Secured Equipment Lease Claim of GE Capital Commercial, Inc. | Unimpaired | Class 1e has been paid in full during the pendency of the case, from the liquidation of its collateral.  The Class 1e Claim holder shall not receive any further payment in dividend under the Plan. ClaimClaimClaimClassClaimClaimClass |
| Class 2 – Allowed Non-Tax Priority Unsecured Claims | Unimpaired | Paid in full on or before the Effective Date of the Plan, or according to such different and/or less favorable terms by agreement.  The Debtor does not believe there are any Class 2 Claims. |
| Class 3 – Allowed General Unsecured Claims | Impaired | Allowed Class 3 Claims will be paid a Pro Rata dividend, from the net proceeds of the assets of the Liquidating Trust (defined below), which includes, without limitation, Cash on hand, any recoveries made on avoidance of preference payments and fraudulent transfers and Directors & Officers and Insurance Policies, and from the sale, liquidation or other disposition of the remaining non-real estate and non-operational assets of the Reorganized Debtor on the Effective Date, depending on the results and resolution of any disputes. Pursuit of said recoveries and resolution of any disputes with Creditors and the sale, liquidation or other disposition of the non-real estate and non-opertationaloperational assets shall be administered by the Trustee of the Liquidating Trust.[2] The Debtor estimates there are approximately $4,654,547.53633,631 in Allowed Class 3 Claims. |
| Class 4 – Subordinated General Unsecured ESOP Contribution Claims | Impaired | Allowed Class 4 Claims will be paid a Pro Rata dividend, if any and only to the extent Allowed Class 3 Claims are paid in full, from the net proceeds of the assets of the Liquidating Trust which includes, without limitation, Cash on hand, any recoveries made on avoidance of |

---

[2] A copy of the Dahl's Liquidating Trust Agreement is attached to this Plan as Exhibit "F" and is incorporated by reference herein.

| | | |
|---|---|---|
| | | preference payments and fraudulent transfers and Directors & Officers and Insurance Policies, and from the sale, liquidation or other disposition of the remaining non-real estate and non-operational assets of the Reorganized Debtor on the Effective Date, depending on the results and resolution of any disputes. Pursuit of said recoveries and resolution of any disputes with Creditors and the sale, liquidation or other disposition of the non-real estate and non-operational assets shall be administered by the Trustee of the Liquidating Trust.  The Debtor estimates that the Class 4 Claim is approximately $1,058,987.00. |
| Class 5 – Equity Interest Holders | Impaired | All Class 5 Interests shall be cancelled on the Effective Date of the Plan. Allowed Class 5 Equity Interests will be paid a Pro Rata dividend, if any, and only to the extent Allowed Class 3 and Class 4 Claims are paid in full, from the net proceeds of the assets of the Liquidating Trust which includes, without limitation, Cash on hand, Directors & Officers and Insurance Policies, and from the sale, liquidation or other disposition of the remaining non-real estate and non-operational assets of the Reorganized Debtor on the Effective Date, depending on the results and resolution of any disputes. Pursuit of said recoveries and resolution of any disputes with Creditors and the sale, liquidation or other disposition of the non-real estate and non-operational assets shall be administered by the Trustee of the Liquidating Trust. |

### E.    Treatment of U.S. Trustee Fees

All fees required to be paid by the Debtor or the Reorganized Debtor pursuant to 28 U.S.C. § 1930(a)(6) (the "U.S. Trustee Fees") will accrue and be timely paid until entry of a Final Decree and the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date

## IV.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A.    Disputed Claims

A disputed Claim is a Claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.

No distribution will be made on account of a disputed Claim unless such Claim is allowed by a final non-appealable order.

**B.      Settlement of Disputed Claims**

After the Effective Date, the Trustee will have the power and authority to settle and compromise a disputed Claim with court approval and compliance with Bankruptcy Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**V.      PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumed Executory Contracts and Unexpired Leases**

Filed contemporaneously with this Plan is the Debtor's Third and Final Motion For Entry of Order Authorizing The Debtor To Assume and Assign Certain Executory Contracts and Unexpired Leases.  Assumption means that the Debtor has elected to continue to perform the obligations under such executory contracts and/or unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Assumption and assignment includes assumption and assignment of the executory contract or unexpired lease to another party who has agreed to fulfill the obligations under such contract or lease.

If you object to the assumption or assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Motion within the deadline for objecting to Motion, unless the Court sets a different time.

**B.      Rejected Executory Contracts and Unexpired Leases**

Filed contemporaneously with this Plan is the Debtor's Motion for Entry of Order Approving Rejection of Certain Executory Contracts and Unexpired Leases and Setting a Bar Date for Lease Rejection Damages Claims.  Any Claim based on the rejection of a contract or lease will be barred if the proof of Claim is not timely filed, unless the Court orders otherwise.

      To the extent not assumed by separate order of the Bankruptcy Court prior to the Confirmation Hearing, all executory contracts and unexpired leases of the Debtor shall be rejected effective upon the Effective Date. Any rejection damages claim arising from the automatic rejection of any executory contract or unexpired lease on the Effective Date must be filed on or before thirty (30) days after the Effective Date.

**VI.     MEANS OF IMPLEMENTING THE PLAN**

**A.      In General**

Substantially all of the Debtor's real estate and operational assets have been sold, transferred or otherwise liquidated during the pendency of this case and prior to the filing of this Plan, either in the ordinary course of business or pursuant to orders of this Court.

Upon confirmation of the Plan, the Reorganized Debtor will make payment in full to all unclassified claims and payments in full to Classes 1C and 2. The Reorganized Debtor will make an initial distribution on all Allowed Class 3 Claims in an amount to be determined prior to Confirmation by the Debtor in consultation with the Official Committee.

The net proceeds from the sale of substantially all of the Debtor's real estate and operational assets that were not distributed in the ordinary course of business or in accordance with orders of the Court will be held in a trust account pending confirmation of this Plan, and disbursed by the Debtor pursuant to the Plan and Confirmation Order on the Effective Date of the Plan. Any Cash, non-real estate and non-operational assets of the Debtor held by the Debtor or Reorganized Debtor on the Effective Date, including, without limitation, any rights, titles, Claims, Causes of Action under Chapter 5 of the Code, or otherwise (the "Litigation Claims), and all Assets of the Debtor on the Effective Date (collectively, theythe "Liquidating Trust Assets"), will be irrevocably transferred to the Trustee of the Liquidating Trust on the Effective Date, which will sell, liquidate and/or otherwise dispose of said assets after the Effective Date for the benefit of Creditors, and distributed pursuant to the Plan and the Liquidating Trust Agreement. The deeding of any real property, if any, to the Trustee of the Liquidating TrustTrustee shall be exempt from document stamps pursuant to Code Section 1146(a).

B.      Non-Real Estate and Non-Operational Assets

As of the filing of this Plan, the Debtor's non-real estate and non-operational assets include, but are not limited to the following:

1)      Two (2) tranches of AWG Patronage Certificates, the first with a face value of $417,277, maturing on November 31, 2018 and the second with a face value of $554,101 maturing on November 31, 2019. The Debtor has received authority from AWG to solicit other AWG Coop Members for offers to purchase the Debtor's AWG Patronage Certificates at a discount. The Debtor  anticipates accepting the highest and best offer from either AWG or one of its AWG Coop Members.

2)      Potential refund from deposit on account of a large-deductible, self-insured workers' compensation insurance policy. The Debtor estimates this assetsasset may realize approximately $100,000 upon satisfaction of all pending claims.

3)      The Debtor believes it may have a Claim in a pending class-action lawsuit against Visa and Mastercard regarding interchange fees. The Debtor has not fully investigated whether it has such a Claim, or if it does, how large of a Claim it might be able to assert. The Debtor is aware that there are "Claims traders" who are offering to buy such Claims at discount.

4)      The Debtor continues to collect accounts receivables from various vendors and insurance companies on account of vendor refunds and its previous pharmacy operations. It has not been determined whether all refund Claims from vendors and/or insurance Claims for pharmacy receivables will be collected by the time the Plan is confirmed.

5)      The Debtor is pursuing Iowa State Sales and Use Tax refund Claims for the period between July 1, 2012 through and including March 31, 2015.

6)      The Debtor and AWG established a $600,000 Escrow at closing of the Debtor's sale of substantially all of its real estate and operational assets, to provide for post-closing reconciliation of several items provided for in the asset purchase agreement. The Debtor estimates that after final reconciliation of all accounts with AWG, the Debtor will receive approximately $450,000.00 upon closure of the Escrow.

**B.      Source of Payments**

Payments and distributions under the Plan will be funded by the following: Cash on hand, proceeds from the sale of substantially all of the Debtor's non-real estate and non-operational assets, and recoveries, if any, from pursuit of Litigation Claims.

**C.      Cessation of the Debtor's Business Operations**

Upon the closing of each sale of the Debtor's real estate and operational assets, the Debtor effectively and actually did cease all business operations.  Upon cessation of all business operations, the Debtor has focused, and shall continue to focus all of its energy and efforts in seeking confirmation of this Plan and distribution of the proceeds from the sale, transfer or other liquidation of its remaining non-real estate and non-operational assets.

**D.      Post-Effective Date Operations of the Debtor**

After the Effective Date of the Plan, the Reorganized Debtor shall cooperate and provide all requisite information, data and other books and records to the Liquidating Trust so that it can properly and effectively pursue and discharge its obligations under this Plan.   The Debtor's representatives shall be compensated for such services on an hourly basis, but only to the extent such services are requested by the Liquidating Trustee and the Liquidating Trustee determines, in his sole discretion, that the amount of fees incurred for such services are reasonable.

**E.      Retention of Liens**

All valid, binding and perfected liens, Claims, encumbrances and interests of all Claim holders in the real estate and operational assets of the Debtor and non-real estate and non-operational assets, shall attach to the proceeds , pursuant to Bankruptcy Code Section 363, in the same priority as held pre-petition.

**F.      Post-Confirmation Compensation of Professional Persons**

Compensation for services rendered and for reimbursement of expenses by a Professional Person after the Confirmation Date need not be approved by the Bankruptcy Court.  Professional Persons may invoice the Liquidating Trust directly, and the Liquidating Trustee may pay such invoices without further Order of the Bankruptcy Court; provided, however, that in the event of a

dispute between the <span style="color:red">Liquidating</span> Trustee and the Professional Person regarding such compensation or reimbursement, the <span style="color:red">Liquidating</span> Trustee or Professional Person may submit an application to the Bankruptcy Court for review of the request for compensation and reimbursement, and the Bankruptcy Court retains jurisdiction to hear and approve such application and compel payment thereon.  Such post-Confirmation Date compensation for services rendered and reimbursement of expenses shall be considered an ordinary operating expense, and the Liquidating Trust shall be liable for such expense in accordance with the terms of the Liquidating Trust.

### G.    All Post-Petition Section 1129(a)(4) Payments Subject to Bankruptcy Court Review

As required by Bankruptcy Code Section 1129(a)(4), all payments made, or to be made by the Debtor, the Reorganized Debtor or the Trust for post-petition services, or for costs and expenses in, or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, <u>prior to the Confirmation Date</u>, are subject to approval of the Bankruptcy Court as reasonable.  To the extent that any such payment is not subject to the procedures and provisions of Code Sections 326-330, pursuant to this Plan, or otherwise, then such Bankruptcy Court approval shall be deemed to have been given through entry of the Confirmation Order unless, within 15 days of such payment or request for such payment, the Bankruptcy Court, the Official Committee, the United States Trustee, the party making the payment, or the party receiving the payment challenges or seeks approval of the reasonableness of such payment; no other parties or entities shall have standing to make such a challenge or application for approval.  Nothing in this provision shall affect the duties, obligations and responsibilities of any entity under Code Sections 326-330 and is subject to the provisions of Article III(C)(1).

### I.    Default

1.    Events of Default

The following shall be events of default under this Plan:

a.    The failure of the Debtor to make any payment required under the Plan when due; <u>provided</u>, <u>however</u>, that, except as otherwise provided in this Plan, no default shall be deemed to have occurred if such missed payment is made within ten (10) days of its due date.

b.    Provided no agreement exists to extend or modify the terms of any agreement between the Debtor and third-party vendors or Creditors, failure of the Debtor to pay when due all debts and expenses in the ordinary course of its financial affairs.

c.    A material breach of any provision of this Plan.

2.    Cure of Prior Defaults

18

As of the Effective Date, any defaults by the Debtor under any non-bankruptcy agreement shall be deemed cured, and notice of default or sale recorded by any Creditor prior to the Effective Date shall be deemed null, void, and to have no further force or effect.

          3.          Consequences of Default

Except as otherwise provided by this Plan or by an order of the Bankruptcy Court issued upon application by a party in interest, if an event of default under this Plan occurs and is not cured within ten (10) days after service of written notice of default on: (i) the Debtor or Reorganized Debtor and on counsel for the Debtor or Reorganized Debtor prior to the Effective Date; and (ii) the Liquidating Trustee and counsel for the Liquidating Trustee after the Effective Date, any holder of an Allowed Claim, subject to the provisions of this Plan, may immediately seek appropriate relief from the Bankruptcy Court.

Notwithstanding the foregoing, the Reorganized Debtor or another party in interest may seek an order of the Bankruptcy Court staying any Creditor from pursuing its default rights and remedies based on appropriate grounds.  Except as otherwise specified in this Plan, such grounds may include, among others: (1) that no uncured default has occurred; and (2) that the Creditor is adequately protected and the Reorganized Debtor or the Liquidating Trustee is likely to be able to cure any default within a reasonable period of time taking into account the Reorganized Debtor's right to seek modification of this Plan in accordance with applicable bankruptcy law. The Reorganized Debtor shall bear the burden of proof with respect thereto.

Notices pursuant to this Article shall be served as follows:

<u>Counsel for the Reorganized Debtor</u>:
Jeffrey D. Goetz, Esq.
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

<u>Reorganized Debtor</u>:
Foods, Inc.
Mr. Dean Longnecker
P.O. Box 1218
Johnston, IA  50131

~~Dahl's~~ Liquidating ~~Trust~~Trustee:
~~To Be Determined~~
Barry A. Chatz, Esq.
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606

### J.    Post-Confirmation Management

The Post-confirmation managers of the Debtor, and their compensation, will be as follows:

| Name | Insider | Position | Hourly Compensation |
|------|---------|----------|---------------------|
| Dean Longnecker | Yes | Chief Executive Officer & Chief Restructuring Officer | $350.00 |
| Craig Moore | Yes | Consultant | $350.00 |

### K.    Risk Factors

The assumptions made in this Plan are based upon the best information available to the Debtor at this time.  The Debtor reserves the right to revise the data, projections, and assumptions contained herein as more accurate information becomes available.  In addition, the listing of a particular Claim for a specific amount in this Plan is not an admission by the Debtor as to either liability or amount, and the Debtor, and after the Effective Date, the Trustee, reserves the right to object to any and all Claims in accordance with the Plan.

Finally, with regard to the Liquidating Trust's pursuit of recovery of Litigation Claims, there is a risk that such actions are unsuccessful, or result in negligible or less than anticipated recoveries.

The Debtor believes, however, that with cooperation between and among the various creditors, interested parties and other constituencies in the case, such risks will be mitigated and minimized, and that the Plan will be fully implemented.

### L.    Tax Consequences of Plan

The Debtor will not seek a ruling from the Internal Revenue Service prior to the Effective Date with respect to any of the tax aspects of the Plan.  **EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS/HER/ITS TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

ANY PERSON CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN IS STRONGLY URGED TO CONSULT WITH HIS/HER/ITS OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS TO DETERMINE HOW THE PLAN MAY AFFECT

HIS/HER/ITS FEDERAL, STATE, LOCAL AND FOREIGN TAX LIABILITY.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.  The Plan Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the tax code embodies many complicated rules which make it difficult to completely and accurately state all of the tax implications of any action or transaction.

The following are the tax consequences that the Plan will have on the Debtor's tax liability:

The Debtor is unaware of any adverse tax consequences of the Plan as to the Debtor.  The Debtor expects to minimize its tax liability and, to the extent permitted by the Tax Code, will seek to expense from current income the amounts paid under the Plan.  Notwithstanding the foregoing, the feasibility of the Plan does not depend on the deductibility of amounts paid.

The Debtor is unaware of any adverse tax consequences of the Plan to Creditors.  It is not necessary or practical to present a detailed explanation of the federal income tax aspects of the Plan or the related bankruptcy tax matters involved in this Chapter 11 case.  The tax consequences resulting from the Plan to each individual Creditor should not vary significantly from the past tax consequences realized by each individual Creditor.  To the extent that the tax consequences do vary for individual Creditors, each one is urged to seek advice from his/her/its own counsel or tax advisor with respect to the federal income tax consequences resulting from confirmation of the Plan.

The Liquidating Trust will withhold all amounts required by law to be withheld from payments to holders of Allowed Claims.  In addition, such holders may be required to provide certain tax information to the Liquidating Trust as a condition of receiving distributions under the Plan.  The Liquidating Trust will comply with all applicable reporting requirements of the Internal Revenue Code of 1986, as amended.

### M.    The Dahl's Liquidating Trust

The Official Committee appointed in the Bankruptcy Case shall cease to continue after the Effective Date. All rights to pursue actions to recover money from Litigation Claims, sale, disposition or other liquidation of any remaining non-real estate and non-operational assets shall be vested with the Trustee of the Liquidating TrustTrustee on the Effective Date of the Plan, pursuant to the terms of the Liquidating Trust Agreement.

The Debtor and the Official Committee shall select and identify the initial Trustee of the Liquidating Trust within Ten (10) days of the hearing on Plan Confirmation. The Trustee Trustee will be compensated at his/her regular hourly rate in anthe amount to be determined and disclosed prior to the hearing on Plan Confirmation. of $495.00 for services as Liquidating Trustee and the reduced rate of $295.00 for any necessary disbursement services. The terms, conditions and provisions of the Liquidating Trust Agreement will be prepared and finalized within Ten (10) days of the hearing on Plan Confirmation, pursuant to agreement by the Debtor,

the Liquidating Trustee and the Committee.  A copy of the Dahl's Liquidating Trust Agreement, in a form substantially as attached hereto as Exhibit F, is incorporated by reference herein.

The Liquidating Trust Agreement provides for an oversight committee (the "Oversight Committee").  As set forth in more detail in the Liquidating Trust Agreement, the Oversight Committee shall generally oversee the actions of the Liquidating Trustee in administering the Liquidating Trust.

On at least an annual basis after the Effective Date, the Liquidating Trust shall make distributions of Liquidating Trust Assets to Creditors, pursuant to the terms of the Plan and the Liquidating Trust Agreement. Compensation to the Professional Persons employed by the Liquidating Trustee for services rendered infor, among other things, pursuit of the Litigation Claims, shall be paid not less than annually as set forth in the Liquidating Trust Agreement from the Liquidating Trust Assets.

The Bankruptcy Estate will treat the transfer of its assets to the Liquidating Trust as a transfer to the Creditors for all purposes under Internal Revenue Code Sections 61(a)(12), 483, 1001, 1012 and 1274, to the extent that the Creditors are the beneficiaries of the Liquidating Trust.  Pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee will file returns for the Liquidating Trust as a Grantor Trust, pursuant to Section 1.671-1(a) of the Income Tax Regulations.  Additionally, the Liquidating Trust will not receive or retain Cash or Cash equivalents in excess of what is a reasonable amount necessary to meet Claims and contingent liabilities or to maintain the value of the assets during liquidation.

Upon the Effective Date, the Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary and in accordance with the Liquidating Trust Agreement.  The Professionals retained by the Liquidating Trustee are not required to be "disinterested" as that term is defined in the Code and may include, without limitation, counsel and financial advisors of any party in the Case.  The Liquidating Trustee's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict will exist by virtue of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance with the Plan.

**N.     Termination of the Dahl's Employee Stock Ownership Plan and Trust**

The Debtor currently sponsors the Dahl's Employee  Stock Ownership Plan and Trust (the "ESOP").  The ESOP was originally adopted on September 26, 1975 and was last amended and restated on January 22, 2013.  The custodian of the assets of the ESOP is The PrinicpalPrincipal.  Prior to the Petition Date, the Debtor, as employer, matched contributions made by employees who contributed to the Dahl's 401(k) Plan 100%, up to 4% of the employees earnings.  The ESOP also allowed for discretionary contributions from the employer

The Debtor has ceased contributions to the ESOP and will terminate the ESOP through the ESOP's Third Party Administrator, The Principal, who will assist the ESOP participants in "rolling over" and/or distributing their vested account balances, if any.

As the Debtor's Plan provides for liquidation of substantially all of the Debtor's assets, and the Debtor has ceased all business operations,, the Debtor shall terminate the ESOP as of the Effective Date.  Any Allowed Claim against the Debtor arising from such termination shall be subordinate to the Claims of Allowed Class 3 Claims pursuant to section 510(b) of the Bankruptcy Code and shall be classified as a Class 4 Claim and treated accordingly.

Since the Petition Date, the Debtor has not engaged any actuary or other accounting professional to determine the amount of the Debtor's unfunded liability, either as of the Petition Date, or the Effective Date.  As of the filing of this Plan, the Department of Labor has filed a proof of Claim.  The Claims Bar Date for Governmental Units, including the ESOP, shall be sixty (60) days after the Effective Date. Notice of the Bar Date for Administrative Expense Claims shall be included in the Confirmation Order mailed to all Creditors and interested parties in the case.

### O.      Termination of the Dahl's 401(k) Plan

The Debtor currently sponsors the Dahl's 401(k) Plan (the "401(k)"),  The 401(k) was originally adopted on October 1, 2002 and was last amended and restated on January 1, 2012.  The custodian of the assets of the 401(k) is The ~~Prinicpal~~Principal.  Prior to the Petition Date, the Debtor, as employer, did not match contributions made by employees who contributed to the 401(k).

Upon cessation of the Debtor's business operations, and final payroll, no further employee contributions have been made to the 401(k).   The Debtor, through the Third Party Administrator, The Principal, has given all 401(k) Plan Participants the requisite notices and shall assist 401(k) Plan Participants in "rolling over" and/or distributing their vested account balances, and otherwise complete the formal termination of the 401(k).

### P.      Unclaimed Funds

Any distribution by check to any holder of an Allowed Claim, if unclaimed or uncashed by the payee thereof within 90 days after issuance and delivery by first class mail, shall become property of the Liquidating Trust, and all liabilities and obligations of the Liquidating Trust to such payee and any holder of such check shall thereupon cease.

### Q.      Bar Date for Administrative Expense Claims

To enable the Debtor to efficiently respond to the multiple Bankruptcy Code Section 503(b)(9) motions filed by the Creditors in this case, the Debtor formulated procedures for the 503(b)(9) motions.  The Debtor filed a Motion for Approval of Procedures for the Treatment of Claims Asserted Under Bankruptcy Code Section 503(b)(9) on December 4, 2014 (Docket Item 166), which was granted by Docket Text Order on December 8, 2014 (Docket Item 172).  All 503(b)(9) Claims were handled according to such procedures.

Except as set forth in Bankruptcy Code § 503(b)(1)(D) and the § 503(b)(9) procedures, all Administrative Expense Claim holders shall file motions for allowance of their

Administrative Expense Claims not later than thirty (30) days after the Effective Date of the Plan or such Administrative Expense Claims shall be disallowed and forever barred. Notice of the Bar Date for Administrative Expense Claims shall be included in the Confirmation Order mailed to all Creditors and interested parties in the case.

### R.    Injunction.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS OR INTERESTS IN OR AGAINST THE DEBTOR OR REORGANIZED DEBTOR ARE, WITH RESPECT TO OR ON ACCOUNT OF ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM:  (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING THE DEBTOR OR REORGANIZED DEBTOR, THE OFFICIAL COMMITTEE, OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS (EXCLUDING THE DEBTOR'S INSIDERS); (II) ENFORCING AGAINST, LEVYING UPON OR ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT) THE DEBTOR OR REORGANIZED DEBTOR, THE OFFICIAL COMMITTEE, OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS (EXCLUDING THE DEBTOR'S INSIDERS); (III) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, CLAIM OR ORDER AGAINST THE DEBTOR OR REORGANIZED DEBTOR, THE OFFICIAL COMMITTEE, OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS (EXCLUDING THE DEBTOR'S INSIDERS); (IV) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIENS, CLAIMS OR INTERESTS OF ANY KIND AGAINST OR IN THE DEBTOR OR REORGANIZED DEBTOR, THE OFFICIAL COMMITTEE, OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS (EXCLUDING THE DEBTOR'S INSIDERS); (V) OTHER THAN AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ASSERTING ANY RIGHT OF SETOFF, SUBORDINATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE THE DEBTOR OR REORGANIZED DEBTOR, THE OFFICIAL COMMITTEE, OR THE LIQUIDATING TRUST OR ANY OF THEIR

RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS (EXCLUDING THE DEBTOR'S INSIDERS); AND (VI) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN.  FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS SECTION SHALL BE INTENDED TO, OR BE DEEMED TO, RELEASE, ENJOIN, DISCHARGE OR OTHERWISE IMPACT ANY CLAIMS, CAUSES OF ACTION, OR RIGHTS OF ANY PARTY AGAINST THE INSIDERS OF THE DEBTOR.

All injunctions or stays provided for in the Bankruptcy Case under section 105 or 362 of the Code, or otherwise, and in existence on the Effective Date, will remain in full force and effect through the imposition of the injunction set forth in the Plan.

### S.      Exculpation and Limitation of Liability.

Neither the Official Committee, the Debtor, the Reorganized Debtor, the Liquidating Trust, nor any of their respective members, officers, directors, shareholders, employees, advisors, attorneys or agents or representatives acting in such capacity (excluding the Debtor's insiders), will have or incur any liability to, or be subject to any right of action by, any Person or entity, for any act or omission in connection with, relating to or arising out of, the Bankruptcy Case or the pursuit of confirmation of the Plan, except to the extent arising out of fraud, willful misconduct or gross negligence, and in all respects will be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.  For the avoidance of doubt, nothing in this section shall be intended to, or be deemed to, release, enjoin, discharge or otherwise impact any Claims, Causes of Action, or rights of any party against the insiders of the Debtor.

## VII.   CONFIRMATION REQUIREMENTS AND PROCEDURES

### A.      Overview of Requirements

To be confirmable, the Plan must meet the requirements listed in Code §§ 1129(a) or (b). These include the requirements that: the Plan must be proposed in good faith; at least one impaired Class of Claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each Creditor and Equity Interest holder at least as much as the Creditor or Equity Interest holder would receive in a Chapter 7 liquidation case, unless the Creditor or Equity Interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in Code § 1129, and they are not the only requirements for confirmation.

### B.      Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor or Equity Interest holder has a right to vote for or against the Plan only if that Creditor or Equity Interest holder has a Claim or Equity Interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

### C.      What Is an Allowed Claim or an Allowed Equity Interest?

Only a Creditor or Equity Interest holder with an Allowed Claim or an Allowed Equity Interest (for voting purposes) has the right to vote on the Plan. Generally, a Claim or Equity Interest is allowed if either (1) the Debtor has scheduled the Claim on the Debtor's schedules, unless the Claim has been scheduled as disputed, contingent, or unliquidated, or (2) the Creditor has filed a proof of Claim or equity interest, unless an objection has been filed to such proof of Claim or equity interest. When a Claim or equity interest is not allowed, the Creditor or equity interest holder holding the Claim or equity interest cannot vote unless the Court overrules the objection or allows the Claim or equity interest for voting purposes under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of Claim in this case was March 4, 2015. The deadline for filing objections to Claims will be sixty (60) days after the Effective Date, which may be extended by order of the Bankruptcy Court.

### D.      What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an Allowed Claim or equity interest has the right to vote only if it is in a Class that is impaired under the Plan. As provided in Code § 1124, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

### E.      Who is Not Entitled to Vote?

The following types of Creditors and Equity Interest holders are not entitled to vote:

1.  Holders of Claims and Equity Interests that have been disallowed by an order of the Court.
2.  Holders of other Claims or Equity Interests that are not "Allowed Claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
3.  Holders of Claims or Equity Interests in unimpaired Classes.
4.  Holders of Allowed Claims entitled to priority pursuant to Code §§ 507(a)(2) and (8).
5.  Holders of Claims or Equity Interests in Classes that do not receive or retain any value under the Plan.
6.  Holders of administrative expenses.

Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan.

**F.        Who Can Vote in More Than One Class?**

A Creditor whose Claim has been allowed in part as a Secured Claim and in part as an Unsecured Claim or who otherwise holds Claims in multiple Classes, is entitled to accept or reject a Plan in each capacity, and should cast one Ballot for each Claim.

**G.        Votes Necessary to Confirm the Plan**

Since impaired Classes exist under this Plan, the Court cannot confirm the Plan unless (1) at least one impaired Class of Creditors has accepted the Plan without counting the votes of any insiders within that Class, and (2) all impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting Classes, as discussed below in section G.2.

          1.        Votes Necessary for a Class to Accept the Plan

A Class of Claims accepts the Plan if both of the following occur: (1) the holders of more than one-half of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

A Class of Equity Interests accepts the Plan if the holders of at least two-thirds in amount of the allowed Equity Interests in the Class, who vote, cast their votes to accept the Plan.

          2.        Treatment of Non-accepting Classes

Even if one or more impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by Code § 1129(b). A Plan that binds non-accepting Classes is commonly referred to as a "cram down" Plan. The Code allows the Plan to bind non-accepting Classes of Claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Code § 1129(a)(8), does not "discriminate unfairly," and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan.

You should consult your own attorney if a "cramdown" confirmation will affect your Claim or equity interest, as the variations on this general rule are numerous and complex.

**H.        Liquidation Analysis**

To confirm the Plan, the Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claim and/or Equity Interest holder would receive through any Chapter 7 liquidation. This is often referred to as the "Best Interests Test".

In a Chapter 7 case, the Debtor's assets are usually sold or otherwise liquidated by a Chapter 7 trustee. Secured Creditors are paid first from the sales proceeds of properties on which

the Secured Creditors have liens. Administrative Expense Claims are paid next. Costs of liquidation under chapter 7 of the Code would include the compensation of a Chapter 7 trustee, as well as that of counsel and other professionals retained by the Chapter 7 trustee, asset disposition expenses and all unpaid expenses incurred until the liquidation is completed. Next, Unsecured Creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured Creditors with the same priority share in proportion to the amount of their Allowed Unsecured Claims. Finally, Interest holders receive the balance that remains after all Creditors are paid, if any. The following is a hypothetical liquidation analysis demonstrating the amount holders would receive under a Chapter 7 liquidation.

| **Assets** | | | |
|---|---|---|---|
| Cash | | $5,025,368 | (1) |
| Prepaid Expense Recapture | | $25,000 | (2) |
| AWG Patronage Refund Certificates | | $981,481 | (3) |
| Other Assets - Accounts Recievable | | $100,000 | (4) |
| Estimated Refund from Workman Comp Insurance Deposit | | $250,000 | (5) |
| Total Assets | | $6,381,849 | |
| **Liabilities** | | | |
| Allowed Exectory Contract and Unexpired Lease Assumption Cure Claims | | $88,126 | (6) |
| Allowed Section 503(b)(9) Claims | | $1,079,729 | (7) |
| Estimated Professional Fees | | $140,000 | (8) |
| Post-Petition Ordinary Course ExpenseS | | $280,000 | (9) |
| UST Fees | | $10,000 | (10) |
| General Unsecured Claims - Class 3 | | $4,715,602 | (11) |
| Total Liabilities | | $6,313,457 | |
| **Liquidation Analysis** | | | |
| Gross Assets Available | | $6,381,849 | |
| Estimated Professional Fees | | ($140,000) | |
| Post Petition Ordinary Course Expense | | ($280,000) | |
| Allowed Exectory Contract and Unexpired Lease Assumption Cure Claims | | ($88,126) | |
| UST Fees | | ($10,000) | |
| Allowed Section 503b9 Claims | | (1,079,729) | |
| Net Proceeds Available for General Unsecured Claims | | $4,783,994 | |
| General Unsecured Claims - Class 3 | | $4,715,602 | |
| Estimated Recovery for General Unsecured Claims | | 101% | |
| **Footnotes:** | | | |
| (1) | Actual Cash | | |
| (2) | Management Estimate | | |

| (3) | Based on bid for partronage certificates by AWG and projected Patronage Rebates for 2015 earned before closing |
|------|------|
| (4) | Management Estimate based on remaining AR outstanding |
| (5) | Management Estimate |
| (6) | Actual |
| (7) | Actual |
| (8) | Mangement Estimate |
| (9) | Mangement Estimate |
| (10) | Mangement Estimate |
| (11) | Actual |

For the Court to be able to confirm this Plan, the Court must find that all Creditors and Interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under any Chapter 7 liquidation.   Since the Plan here provides for the liquidation of all of the Debtor's assets, like in a hypothetical Chapter 7, the primary reason this Plan is in the best interests of all Creditors is because the Debtor believes it will be able to distribute more money faster to more Classes of Creditors than the delay inevitable with the administration of a Chapter 7 case.   Further, the Debtor anticipates a 100% dividend to all Allowed Class 3 Claims under the Plan.

In a hypothetical Chapter 7 case, the case would be administered by a Chapter 7 Trustee who in all likelihood would not be able to make any distributions for an extended period of time, due to the existing rules and regulations imposed on Chapter 7 Trustees by the Office of the United States Trustee, and the Bankruptcy Code and Rules.

Moreover, the Debtor believes that a significant distinction between the Plan and converting the Case to chapter 7 is the substantial chapter 7 administrative costs that will result from such conversion.  Pursuant to section 326 of the Bankruptcy Code, the statutory chapter 7 trustee fee (the "Chapter 7 Trustee Fee") can equal 25% of the first $5,000 disbursed, 10% on any amount disbursed in excess of $5,000 but not in excess of $50,000, 5% on any amount disbursed in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3% on any amounts in excess of $1,000,000.  Any such Chapter 7 Trustee Fee will directly reduce any recovery for Creditors.

A Chapter 7 trustee will likely also retain professionals for purposes similar to those retained by the Liquidating Trust.  The Chapter 7 trustee and his or her professionals, however, may be unfamiliar with the Debtor's operations and the Bankruptcy Case.  Accordingly, the Chapter 7 trustee and his or her professionals may be required to devote considerable time reviewing the Debtor's books and records and the events of the case occurring prior to the conversion to Chapter 7.  Given this reality, the Debtor estimates that the fees of a Chapter 7 trustee's professionals will exceed the fees of the Liquidating Trust's professionals.

The rates of those professionals retained by the chapter 7 trustee, on the one hand, and the Liquidating Trust, on the other hand, may vary.  For instance, one group of professionals may have higher rates than a group of other professionals. Assuming that both groups of professionals are equally efficient in their approach and effectiveness in the results obtained, this factor may

increase the cost of administration.[3] Based on these facts, the Debtor maintains that this requirement is met here.

### I.      No Need to Show Ability to Make Future Plan Payments and Operate Without Further Reorganization

Pursuant to Code §1129(a)(11), the Debtor must show that it will have enough Cash over the life of the Plan to make the required Plan payments, unless the Debtor's Plan proposes to liquidate its assets.  Since the Debtor's Plan herein proposes such liquidation of its assets, and does not propose future business operations, there is no need to provide projections of future income and expenses, or other similar financial information.

## VIII.   EFFECT OF CONFIRMATION OF PLAN

### A.      Discharge

Pursuant to Code §1141(d)(3), since the Debtor is seeking to liquidate all of its assets and will not engage in business after consummation of the Plan, the Debtor will not be seeking a discharge of debts under Code §1141(d)(1).

### B.      Binding Effect

The provisions of the Plan, the Liquidating Trust Agreement, the Confirmation Order, and any associated findings of fact or conclusions of law shall bind the Debtor, any entity acquiring property under the Plan, and any Creditor of the Debtor, whether or not the Claim of such Creditor is impaired under the Plan and whether or not such Creditor has accepted the Plan.

### C.      Vesting of Property

Confirmation of the Plan vests all of the property of the Debtor's Chapter 11 estate, including the Liquidating Trust Assets, in the Debtor for the benefit of its Creditors, subject only to such liens, encumbrances, and security interests as are provided for in this Plan. On the Effective Date, all of the Liquidating Trust Assets shall vest with the Liquidating Trust for the benefit of Classes 3, 4, and 5, who will then become the beneficiaries of the Liquidating Trust.

### D.      Assets Free and Clear of Liens

As of the Confirmation Date, the assets of the Debtor dealt with under the Plan shall be free and clear from any and all Claims and Interests or the holders of Claims and Interests, except as specifically provided otherwise in the Plan, the Liquidating Trust Agreement or the Confirmation Order.  On the Effective Date, the Liquidating Trust shall be entitled to control its financial affairs without further order of the Bankruptcy Court and to use, acquire and distribute any of its property free of any restrictions of the Bankruptcy Code or the Bankruptcy Court,

---

[3]      Given that the Professional groups have not been – and, in fact, cannot be – identified at this time, it remains impossible to fully evaluate this issue for purposes of voting on the Plan.

except as specifically provided otherwise in the Plan, the Liquidating Trust or Confirmation Order.  The terms of the Plan shall supersede the terms of all prior orders entered by the Bankruptcy Court in the Bankruptcy Case and the terms of all prior stipulations and other agreements entered into by the Debtor with other parties in interest, except as specifically recognized in the Plan, the Liquidating Trust Agreement, or the Confirmation Order.

### E.      Modification of the Plan

The Debtor, as a Plan Proponent, may modify the Plan at any time before confirmation of the Plan, with the written consent of the Official Committee.  However, the Court may require a new Disclosure Statement and/or re-voting on the Plan.  The Debtor may also seek to modify the Plan at any time after confirmation, with the written consent of the Official Committee and only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### F.      Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor, the Trustee, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a Final Decree to close the case. Alternatively, the Court may enter such a Final Decree on its own motion.

## IX.      GENERAL PROVISIONS

### A.      Definitions and Rules of Construction

The definitions and rules of construction stated in Code §§ 101 and 102 apply when terms defined or construed in the Code are used in this Plan and not otherwise defined herein.

### B.      Captions and Headings

The article and section headings used in the Plan are for convenience and reference only, and they do not constitute a part of the Plan or in any manner affect the terms, provisions, or interpretations of the Plan.

### C.      Corporate Governance

Pursuant to Code § 1123(a)(6),  the Articles of Organization and Bylaws of the corporate Debtor shall be amended, to the extent necessary and appropriate, to prohibit the issuance of nonvoting equity securities, and providing, as to the classes of securities possessing voting power, an appropriate distribution of such power among such classes.

### D.      Severability

Should any term or provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of the Plan; provided, however, that this provision shall not be applied or interpreted so as to defeat the primary purpose of this Plan, which is liquidation of the Debtor's assets and distribution of the proceeds thereof to payment of obligations to its Creditors and Interest holders, according to the treatment afforded to their Claims or Interests under the Plan.

### E.    Governing Law

Except to the extent that the Code or other provisions of federal law are applicable, the rights and obligations arising under the Plan in any documents, agreements, and instruments executed in connection with the Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa.

### F.    Successors and Assigns

The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

### G.    Plan Is Self-Executing

The terms and provisions of this Plan are self-executing on the Effective Date.

### H.    Post-Confirmation Jurisdiction

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case, and over the Dahl's Liquidating Trust, subsequent to the Confirmation Date to the fullest extent permitted under Section 1334 of Title 28 of the United States Code, including, without limitation, for the following purposes:

1.    To determine any requests for subordination pursuant to the Plan and Bankruptcy Code §510, whether as part of an objection to Claim or otherwise;

2.    To determine any motion for the sale of the Debtor's property, or to compel re-conveyance of a lien against or interest in such property upon payment, in full, of a Claim secured under the Plan;

3.    To determine any and all proceedings related to allowance of Claims or objections to the allowance of Claims, including objections to the Classification of any Claim and determination of any deficiency Claim following any event of default under this Plan, and including, on an appropriate motion pursuant to Federal Rule of Bankruptcy Procedure 3008, reconsidering Claims that have been allowed or disallowed prior to the Confirmation Date;

4.    To determine any and all applications of Professional Persons and any other fees and expenses authorized to be paid or reimbursed in accordance with the Code or the Plan;

5.    To determine any and all pending applications for the assumption or rejection of executory contracts, or for the assumption and assignment of unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

6.    To hear and determine any and all actions initiated by the Trustee to collect, realize upon, reduce to judgment or otherwise liquidate any Litigation Claim, to the extent that such Litigation Claim was property of the estate prior to the Effective Date;

7.    To determine any and all applications, motions, adversary proceedings and contested or litigated matters whether pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date, including, without limitation, proceedings under the Bankruptcy Code or other applicable law seeking to avoid and recover any transfer of an interest of the Debtor in property or of obligations incurred by the Debtor, or to exercise any rights pursuant to Bankruptcy Code Sections 506, 544-551, and 553;

8.    To modify the Plan, or to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court (including the Confirmation Order), the Plan, or the Disclosure Statement in such manner as may be necessary to carry out the purposes and effects of the Plan;

9.    To determine disputes regarding title of the property of the estate claimed to be property of the estate or of the Debtor whether as Debtor or Debtor-in-Possession, but not as to title to real property acquired after the Effective Date;

10.    To ensure that the distributions to holders of Claims are accomplished in accordance with the provisions of the Plan and the Liquidating Trust Agreement;

11.    To liquidate or estimate any undetermined Claim or Interest;

12.    To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of Claims inconsistent with the terms of the Plan;

13.    To hear and determine disputes concerning any event of default or alleged event of default under this Plan, as well as disputes concerning remedies upon any event of default, including but not limited to determination of the commercial reasonableness of the disposition of any collateral that is the subject of any liens granted under this Plan;

14.    To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

15.    To enter a Final Decree closing the Bankruptcy Case;

16      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated; and

17      To determine such other matters as may arise in connection with the Plan, the Disclosure Statement, or the Confirmation Order.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising out of the Bankruptcy Case, this post-confirmation jurisdiction section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## I.      Wavier of Bankruptcy Rule 3020(e) Stay of Confirmation Order

The 14-day stay of the Confirmation Order provided for in Bankruptcy Rule 3020(e) will be waived, and the Confirmation Order will be effective upon entry on the Court's Docket.

DATED: ~~July 10~~August 7, 2015                    Respectfully submitted

                                                   By: */s/ Dean Longnecker*
                                                        Dean Longnecker, Chief Executive
                                                        Officer & Chief Restructuring Officer
                                                        Foods, Inc.

Jointly Prepared By:
Jeffrey D. Goetz, Esq., IS# 9999366
Krystal R. Mikkilineni, IS#9997703
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
Mikkilineni.krystal@bradshawlaw.com

General Reorganization Counsel for Foods, Inc.,
Debtor and Debtor-in-Possession and Plan Proponent


Richard S. Lauter, Esq.
Devon J. Eggert, Esq.
Elizabeth L. Janczak, Esq.
Freeborn & Peters LLP
311 S. Wacker Dr. Ste. 3000
Chicago, IL 60606
312/360-6641

312/360-6520 FAX
rlauter@freeborn.com
deggert@freeborn.com
ejanczak@freeborn.com

Counsel for the Official Committee of
Unsecured Creditors and Co-Plan Proponent

# APPENDIX 1 - DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings specified below:

1.  **Administrative Expense Claim:**  Any cost or Administrative Expense of the Bankruptcy Case that is entitled to priority in accordance with Bankruptcy Code §§§ 503(b) and 507(a)(2), including, without limitation: any actual and necessary expenses of preserving the Debtor's estate and of operating the Debtor's business from and after the Petition Date through and including the Confirmation Date; all allowances of compensation and reimbursement of costs and expenses to Professional Persons, as approved by a Final Order of the Bankruptcy Court; and any fees or charges assessed against the Debtor's estate under Chapter 123 of Title 28 of the United States Code.

2.  **Allowed Claim:**  Any Claim against the Debtor that meets either of the following two requirements: (1) proof of such Claim was filed on or before the Bar Date, or, if no Proof of Claim is filed, the Claim has been or hereafter is listed by the Debtor in its schedules and statements as liquidated in amount and not disputed or contingent as to liability, and, in either case, no objection to the allowance of such Claim has been filed; or (2) a Claim as to which any objection has been filed and such Claim has been allowed in whole or in part by a Final Order of the Bankruptcy Court.

3.  **Allowed Unsecured Claim:**  Any Allowed Claim that is not an Administrative Expense Claim or an Allowed Secured Claim.

4.  **Ballot:**  The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan, as such form may be approved by the Bankruptcy Court and shall otherwise comply with the requirements of Bankruptcy Rule 3018(c).  Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

5.  **Bankruptcy Case:**  The pending Bankruptcy Case filed by Foods, Inc., on the Petition Date, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned the case number 14-02689-als11.

6.  **Bankruptcy Code:**  The United States Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended.

7.  **Bankruptcy Court:**  The unit of the United States District Court for the Southern District of Iowa, constituted pursuant to 28 U.S.C. § 151, having jurisdiction over the Bankruptcy Case to the extent of any reference made pursuant to 28 U.S.C. ' 157(a), or in the event such court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that has jurisdiction over the Bankruptcy Case.

8.  **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Bankruptcy Case.

36

9.    **Business Day:**  Any day that is not a Saturday, Sunday or legal holiday as identified in Federal Rule of Bankruptcy Procedure 9006(a).

10.    **Cash:**  Cash and cash equivalents, including, but not limited to, bank deposits, checks, wire transfers, money orders, certificates of deposit and other similar, readily marketable securities or instruments, together with any interest earned or accrued thereon.

11.    **Causes of Action:**  All causes of action of any kind held by the Debtor whether or not such causes of action are the subject of presently pending lawsuits, adversary proceedings or appeals, including, without limitation:  (i) causes of action belonging to the Debtor as of the Petition Date; (ii) causes of action belonging to the Debtor that arose after the Petition Date; and (iii) rights exercisable by the Debtor as Debtor-In-Possession pursuant to Bankruptcy Code §§ 506, 510, 544, 545, 547, 548, 549, 550 or 553.

12.    **Claim:**  Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

13.    **Claims Objection Bar Date:**  The date established by the Bankruptcy Court pursuant to an order entered in this Bankruptcy Case or in the Confirmation Order by which written objections to a Proof of Claim must be filed.

14.    **Class:**  A category or group of Creditors which are substantially similar to the Claims of the other Creditors in such Class, as designated by the Plan pursuant to Bankruptcy Code §§ 1122 and 1123.

15.    **Confirmation Date:**  (i) If no appeal of the Confirmation Order is filed, the first Business Day after the expiration of time for an appeal of the Confirmation Order; or (ii) if an appeal of the Confirmation Order has been filed, the first Business Day after the expiration of time for an appeal of the Confirmation Order, provided that no stay of the Confirmation Order pending appeal has been granted; or (iii) if an appeal of the Confirmation Order has been filed and a stay of the Confirmation Order has been granted, the first Business Day after the expiration or termination of such stay.

16.    **Confirmation Hearing:**  The duly noticed hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to Bankruptcy Code § 1128, scheduled on such date fixed by the Bankruptcy Court in the order approving the Disclosure Statement, any scheduling order or otherwise.  The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing.

17. **Confirmation Order:** The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

18. **Creditor:** Any Person who has a Claim against the Debtor that arose on or before the Petition Date, or a Claim against the Debtor of any kind specified in § 502(g), (h) or (i) of the Bankruptcy Code.

19. **Debtor:** Foods, Inc. fdba Dahl's Foods.

20. **Debtor in Possession:** The Debtor, as Debtor in Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

21. **Disclosure Statement:** The Disclosure Statement respecting the Plan filed by the Debtor in the Bankruptcy Case and approved, conditionally or otherwise, by order of the Bankruptcy Court, as containing adequate information in accordance with Bankruptcy Code § 1125, as such Disclosure Statement may be modified, amended or supplemented from time to time thereafter.

22. **Effective Date:** The first Business Day that is fourteen (14) days after the Confirmation Date.

23. **Equity Interests:** Shareholders holding an ownership interest in the Debtor.

24. **Final ~~Order~~Decree:** An order or a judgment of a court which has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal or to seek review by certiorari or rehearing has expired and no appeal, review, certiorari or rehearing petition has been filed; or (ii) any appeal, review, certiorari or rehearing proceeding that has been filed has been finally determined or dismissed, and the time to further appeal or to seek further review by certiorari or rehearing has expired and no further appeal, review, certiorari or rehearing petition has been filed.

~~25~~25. **Litigation Claims:** Any rights, titles, Claims, Causes of Action under Chapter 5 of the Code, or otherwise held by the Debtor, its estate or Reorganized Debtor on the Effective Date.

26. **Liquidating Trust:** That certain liquidating trust established for the collection of funds from the liquidation of Debtor's assets for payment of claims.

~~26~~27. **Liquidating Trust Agreement:** the Dahl's Liquidating Trust Agreement to be executed as soon as reasonably practicable after the Confirmation Date among the Debtor, the Official Committee and the Liquidating Trustee, which shall govern the obligations of the Liquidating Trustee with respect to oversight of the distribution of the net proceeds of the Liquidating Trust Assets, as further set forth in the Liquidating Trust Agreement and the Plan.

28.    **Liquidating Trust Assets**:  Those assets to be transferred to and vested in the Liquidating Trust under this Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all assets acquired by the Liquidating Trust at any time.

The Liquidating Trust Assets shall include, without limitation:  (i) all Cash held by the Debtor, including any Cash received by the Debtor through the Sale Order or other disposition of property of the estate (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims and other allowed administrative expenses); (ii) any remaining personal property owned by the Debtor as of the Effective Date; (iii) any remaining real estate owned by the Debtor as of the Effective Date; (iv) all Litigation Claims; and (v) any other property of the Debtor's estate.

29.    **Liquidating Trustee:**  Barry A. Chatz, Esq., Arnstein & Lehr LLP, 120 South Riverside Plaza, Suite 1200, Chicago, IL 60606

30.    **Person:**  An individual, corporation, partnership, limited liability company, or other legal or governmental entity.

2731.    **Petition Date:**  November 9, 2014, the date the Debtor filed its Voluntary Chapter 11 Petition for relief, commencing the Bankruptcy Case.

2832.    **Plan:**  The Debtor's First Amended Plan of Reorganization dated July 10August 7, 2015, and any exhibits and schedules attached thereto and any documents incorporated by reference, either in its present form or as it may be altered, amended or modified from time to time to the extent permitted herein or by the Bankruptcy Code.

2933.    **Priority Non-Tax Claim:**  Any Claim entitled to priority and payment under § 507 of the Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.

3034.    **Priority Tax Claim:**  Any Claim entitled to priority and payment under § 507(a)(8) of the Bankruptcy Code.  All Secured Priority Tax Claims shall be deemed Unclassified Claims and not be classified and/or treated as Secured Claims under this Plan.

3135.    **Professional Person:**  Any attorney, accountant, or other professional:  (i) engaged by the Debtor or any committee and approved by order of the Bankruptcy Court in the Bankruptcy Case; or (ii) engaged by the Reorganized Debtor after the Effective Date.

3236.    **Proof of Claims Bar Date:**  March 4, 2015, as established by Bankruptcy Court order entered on November 12, 2014 (Docket Item 44).

3337.    **Pro Rata:**  Proportionately, so that the ratio of the amount of a particular Claim to the total amount of Allowed Claims of the Class in which a particular Claim is included is the same as the ratio of the amount of consideration distributed on account of such

particular Claim to the consideration distributed on account of the Allowed Claims of the Class as a whole in which the particular Claim is included.

3438. **Reorganized Debtor:** Foods, Inc. fdba Dahl's Foods, on and after the Confirmation Date.

3539. **Secured Claim:** A Claim to the extent such Claim is secured as defined in Bankruptcy Code § 506. An "Allowed Secured Claim" is thus both an Allowed Claim and Secured Claim as defined herein.

3640. **Secured Creditor:** Any Creditor that is the holder of a Secured Claim, to the extent of such Claim.

3741. **Unsecured Claim:** Any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim or a Secured Claim, and all Claims of Secured Creditors to the extent such Claims are valued as unsecured pursuant to § 506(a) of the Bankruptcy Code.

3842. **Unsecured Creditor:** Any Creditor holding an Unsecured Claim.

The words "herein" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning, interpretation and/or construction of the Plan.

A term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code. A term used in this Plan and not defined herein or in the Bankruptcy Code, but which is defined in the Bankruptcy Rules, has the meaning assigned to the term in the Bankruptcy Rules.

**EXHIBIT A**

Current and Former Managers, Officers, Directors and Shareholders of the Debtor

| Name | Number of Shares | Officer | Director | Former |
|------|-----------------|---------|----------|--------|
| Craig Moore | | CEO | Director | |
| Gary Dean Longnecker | | CFO | Director | |
| Tim Davis | Less than 5% | Vice President | Director | |
| Kenny Kane | Less than 5% | | Director | |
| David Wilson | Less than 5% | | Director | |
| David Wilkerson | | | Director | |
| David Sinwell | | | | Former CEO/Director |
| Mark Brase | | | | Former President/Director |
| Richard Rissman | | | | Former Director |
| Michael Hoffman | | | | Former Director |
| Marilyn Aldridge | | | | Former Director |

**EXHIBIT B**

Copy of Court's Docket

**EXHIBIT C**

Audited consolidated financial statements as of September 28, 2013.

**EXHIBIT D**

~~May~~June, 2015 Monthly Operating Report

**EXHIBIT E**

Equity Interest Holders, including ESOP

**EXHIBIT F**

Dahl's Liquidating Trust Agreement

# EXHIBIT G

Schedule of Allowed Class 3 General Unsecured Claims

# EXHIBIT H

Allowed 503(b)(9) Claims